Ray Patrick THOMPSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–01123–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 11, 1996.

Leslie Werner de Soliz, Houston, William H. Patterson, Pasadena, for Appellant.

John B. Holmes, Jr., Ernest Davila, Kelly Dirhler, Houston, for Appellee.

Before OLIVER–PARROTT, C.J., and TAFT and PRICE,* JJ.

## OPINION ON MOTION FOR REHEARING

OLIVER–PARROTT, Chief Justice.

We deny appellant's motion for rehearing, withdraw our opinion and judgment of August 17, 1995, and substitute this opinion.

Appellant was indicted for first degree murder and pled "not guilty." A jury convicted appellant as charged and sentenced him to life imprisonment and assessed a fine of $10,000. Appellant raises four points of error on appeal. We affirm.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Hous-

### Background

On January 22, 1993, appellant was charged with the murder of his wife, Betty Thompson, on or about January 11, 1993. The victim's body was found in a barrel buried near the Brazos River.

Testimony during the guilt-innocence phase of trial indicated that appellant did not act concerned and felt no remorse over his wife's disappearance. Counsel elicited testimony that appellant was "tired of living, living like that, the way he was living." Testimony indicated that appellant said he was "literally sick." A police officer testified that appellant appeared depressed and suicidal on January 20. At the punishment phase, testimony from appellant's bondsman and father indicated that appellant may have been depressed and may have attempted suicide while in jail in January 1993. Appellant's father also testified that he took appellant to the psychiatric ward of a hospital on the night appellant was released on bond.

Counsel filed two pre-trial motions, one for probation and one to have the jury assess punishment. During voir dire, counsel asserted several times that the case primarily involved the issue of punishment. During closing argument of the guilt-innocence phase of the trial, counsel reiterated that the real issue was one of punishment, and expressed his opinion that there would be a punishment hearing. The jury took 15 minutes to find appellant guilty as charged.

Several witnesses testified on appellant's behalf during the punishment phase. During closing argument, counsel reminded the jury that the defense told them that they would "never take issue with the fact that Ray Thompson killed Betty Thompson."

### Point of Error One

Appellant's first point of error contends that the trial court erred in failing to impanel a second jury to determine appel-

ton, sitting by assignment.

lant's competency at the time of trial. Appellant argues that sufficient evidence was presented to raise the question of whether appellant was competent to stand trial, and that the trial court was required to halt the proceedings, inquire into appellant's competency, and impanel a separate jury to decide the issue.

Appellant recognizes the distinction between evidence pertaining to his insanity at the time of the offense and evidence of his incompetency to stand trial. As evidence of insanity at the time of the offense, appellant points to testimony regarding his state of mind shortly after the death of his wife. However, the testimony upon which appellant relies to raise an issue of incompetency at the time of trial is more relevant to the issue of insanity at the time of the offense. That testimony pertains to appellant's state of mind shortly after his wife's death or shortly after appellant's arrest.

■ It is well settled that the conviction of one who is legally incompetent to stand trial violates due process of law. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 839, 15 L.Ed.2d 815 (1966); *Bonner v. State,* 520 S.W.2d 901, 905 (Tex.Crim.App.1975); *Perryman v. State,* 494 S.W.2d 542, 544 (Tex. Crim.App.1973). Once an issue of incompetency arises, a separate hearing for determination of competency is required to meet due process demands. *Townsend v. State,* 427 S.W.2d 55, 57 (Tex.Crim.App.1968). In Texas, the hearing must be conducted by jury trial. *Id.* at 58.

■ Whether an issue of incompetency exists at the time of trial is left to the discretion of the trial judge. *Ainsworth v. State,*

493 S.W.2d 517, 521 (Tex.Crim.App.1973). Therefore, in determining whether the trial court erred in not conducting a competency hearing, we must apply an abuse of discretion standard. *Id.* at 521.

■ Pretrial assertions of incompetency may be made either on motion by defendant or his counsel or by the court's own motion. Tex.Code Crim.Proc.Ann. art. 46.02 § 2(a) (Vernon 1979). At no time prior to trial did appellant or his counsel point out to the court the evidence now relied upon to raise the issue of incompetency. Nor was there a request for a separate proceeding to determine the issue. Instead, appellant claims on appeal for the first time that the court should have sua sponte halted proceedings and conducted a competency hearing.

Article 46.02, section 2(b), of the Code of Criminal Procedure provides:

> If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

Tex.Code Crim.Proc.Ann. art. 46.02, § 2(b) (Vernon 1979). In order to trigger a section 2(b) hearing, the evidence must be sufficient to create a bona fide doubt in the mind of the court whether defendant meets the test of legal competence. *Mata v. State,* 632 S.W.2d 355, 357 (Tex.Crim.App.1982); *Pipken v. State,* 671 S.W.2d 626, 629 (Tex.App.—Houston [1st Dist.] 1984, no pet.). *But see Brown v. State,* 871 S.W.2d 852, 859 (Tex.App.— Corpus Christi 1994, pet. ref'd).[1]

■ The test of legal competence to stand trial is whether the defendant has the pres-

---

1. Appellant cited *Brown* in oral argument to support a mere scintilla of evidence standard for triggering a section 2(b) hearing. The *Brown* court cites *Mata* in support of its conclusion that "[u]nder Section 2(b), therefore, a mere scintilla of evidence from any source requires the trial court to hold a Section 2 hearing, however informal." *Brown,* 871 S.W.2d at 859 n. 2. We are unable to find support for that conclusion in *Mata. Mata* clearly indicates that the level of evidence required to trigger a section 2(b) inqui-

ry is "a bona fide doubt as to the competency of a defendant." *Mata,* 632 S.W.2d at 358. The standard *at* the section 2(b) hearing is more than a scintilla of evidence. *See id.* at 357 ("If, *at such hearing,* evidence more than a scintilla is produced that would support a finding of incompetence, a Section 4 jury hearing is required.") (emphasis added). We choose to rely upon the explicit "bona fide doubt" standard for triggering a section 2(b) hearing as articulated in *Mata.*

ent ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. *Barber v. State,* 737 S.W.2d 824, 828 (Tex. Crim.App.1987) (citing Tex.Code Crim.Proc. Ann. art. 46.02, § 1(a) (Vernon 1979)).

■■■ The trial court may rely upon personal observations, known facts, evidence presented, motions, affidavits, or any reasonable claim or credible source creating a bona fide doubt of the defendant's competency to stand trial. *Townsend,* 427 S.W.2d at 63. Each instance must be examined on a case by case basis to determine if a bona fide doubt is raised. *Mata,* 632 S.W.2d at 359. Generally, there must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation. *Id.* at 359.

The only evidence even remotely related to appellant's claim of incompetency at the time of trial was witness testimony at the punishment phase. Testimony indicated that appellant was depressed and may have attempted suicide in January 1993. Appellant's bail bondsman thought appellant was in a "mental deal in the new jail" and that appellant was in a hospital for three weeks after being released from jail on bond. The bondsman also testified that he saw marks on appellant's neck.

Appellant's father testified that appellant "sounded very despondent" on the phone after being released from jail. Upon arrival at appellant's home that night, appellant's father detected the presence of natural gas and was told by appellant that "he just wanted to get it over with." Appellant's father also testified that he checked appellant into a psychiatric ward of a hospital because he could not "take him anywhere because of his mental condition."

■■■ There is nothing in the record to confirm that appellant was admitted to the hospital or whether he was examined by a physician. Even if there were, the fact that a defendant has been treated by a psychia-

trist does not constitute evidence that the defendant is incompetent to stand trial. *Gilbert v. State,* 852 S.W.2d 623, 627 (Tex. App.—Amarillo 1993, no pet.) (citing *Leyva v. State,* 552 S.W.2d 158, 161 (Tex.Crim.App. 1977)).

We are unable to detect sufficient evidence of incompetency that would require the trial court to halt proceedings and conduct a section 2(b) hearing. Symptoms of depression and evidence of suicide attempts, arguably reasonable reactions to being charged with the murder of one's wife, do not amount to evidence of "recent severe mental illness." More significantly, the events referred to occurred during or shortly after appellant was in jail in January, more than nine months prior to trial. No evidence from any source was brought to the trial court's attention regarding the appellant's ability in November of 1993 to consult with his lawyer and understand the proceedings against him as required by article 46.02, section 1.

Appellant's attorney did not complain of any inability to communicate with appellant, and there is no indication in the record that appellant's appearance or demeanor during trial was out of the ordinary. We overrule point of error one.

### Points of Error Two Through Four

In his remaining points of error, appellant argues that he received ineffective assistance of counsel which deprived him of due process of law.

Both the United States and Texas Constitutions guarantee the assistance of counsel to a defendant in a criminal prosecution. U.S. Const. amend. VI; Tex. Const., art. I, § 10. The United States Supreme Court established the federal constitutional standard for determining ineffectiveness of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Texas Court of Criminal Appeals adopted the federal standard shortly thereafter in *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim. App.1986). In *Hernandez,* the court held

that the Texas standard was identical to the federal standard articulated in *Strickland*. *Id.* at 56–57; *see also Hathorn v. State*, 848 S.W.2d 101 (Tex.Crim.App.1992).

■ The *Strickland* standard requires that a defendant meet a two-prong test in order to establish ineffective assistance of counsel at the guilt-innocence phase of a non-capital trial. First, the attorney's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Hernandez*, 726 S.W.2d at 55. Second, there must be a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Id.*

■ The first prong addresses the standard of professional performance, with a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Hall v. State*, 766 S.W.2d 903, 906 (Tex.App.—Fort Worth 1989, no pet.). Part of this "range of reasonable assistance" is the possibility that counsel's actions could be viewed as sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Jackson v. State*, 877 S.W.2d 768, 770 (Tex. Crim.App.1994). The second prong defines the level of prejudice that would constitute reversible error. *Hernandez*, 726 S.W.2d at 55. A "reasonable probability" is one which is sufficient to undermine confidence in the outcome of the proceedings. *Jackson*, 877 S.W.2d at 770.

■ Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Thomas v. State*, 886 S.W.2d 388, 391 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). Evidence of ineffective counsel must be firmly grounded in the record. *Id.*

■ Examining each claim in sequence, appellant argues in point of error two that counsel's comments during voir dire and closing argument deprived him of due process of law. The effect of these comments, appellant argues, is to deprive him of the presumption of innocence.

During voir dire, counsel made the following comments:

> I also know what the evidence is going to be presented in this case and in my opinion the only thing we are going to resolve here is the question of punishment ... I think what we are going to be here is for an issue of punishment and I say that with all candor before I've never done that with jurors. I've talked to Ray about it and his family and I think before the day is up 12 of you folks are going to be and eventually toward the end of the week talking about punishment, what somebody deserves for being convicted of murder.

Before questioning the jurors, counsel remarked:

> [T]he only time you ever get to punishment is if somebody is convicted and found guilty of a crime. You don't talk about it until then, and what happens you are found guilty of a crime and again we anticipate with the evidence in this case and the publicity going on, we anticipate being at that juncture in this case and if you are on a jury and this—let's assume you are on a jury and there is no reasonable doubt in your mind that the person is guilty of taking a human life, what sort of evidence would you look for to help you assess punishment.

During closing argument of the guilt-innocence phase on November 12, counsel commented:

> As I told you folks on Wednesday morning, that Ray Thompson and I both had agreed and talked about this and we thought that the real issue in this case would be punishment. Ray and I both believe, I'm not going to—we should not insult people's intelligence and the real issue in this case we have always believed is one of punishment. I told you that Wednesday and I reiterate the same thing today. All I want to do in behalf of Ray Thompson and myself is to thank you for listening to this

thus far and again we will reserve what we have to say later because I think there will be a punishment hearing. Thank you very much.

▮ Voir dire and closing argument are areas where trial strategy is most evident. We will review matters of trial strategy only if an attorney's actions are without any plausible basis. *Simms v. State*, 848 S.W.2d 754, 757 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

It is plausible that counsel, after reviewing the evidence to be presented, decided that the best strategy would be to appear open and honest to the jury in hopes of mitigating punishment. Appellant himself may have reached that conclusion. Indeed, each remark contains a reference to appellant's agreement over the issue, implying that counsel and appellant were utilizing a particular strategy to gain a sympathetic jury. By the time of closing argument, the jury had heard overwhelming, properly admitted, evidence of appellant's guilt. Under those circumstances, an attempt to mitigate punishment may have been the only realistic strategy. *See Thomas*, 886 S.W.2d at 392 (failure to object to hearsay testimony may have been a plausible trial strategy); *Varughese v. State*, 892 S.W.2d 186, 196 (Tex. App.—Fort Worth 1994, no pet.) (failure to object was part of a strategy to appear open and honest).

Appellant interprets these comments to mean that counsel "told the jury appellant killed his wife." That is not how we interpret counsel's remarks. It is apparent to us that counsel simply chose to focus on punishment in order to obtain a jury as sympathetic as possible in a case with overwhelming evidence of appellant's guilt. These comments are not like the testimony of extraneous offenses in *Hutchinson*, as appellant argues. *Hutchinson v. State*, 663 S.W.2d 610, 614 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). In *Hutchinson*, we held that counsel was ineffective for eliciting extraneous offenses through witness testimony. Here, counsel did not introduce evidence or adverse testimony; rather, counsel made comments to a jury which we believe evidences a trial strategy capable of producing benefits for appellant.

Counsel's comments could be construed as an inappropriate admission of guilt or they could be viewed as part of a trial strategy. Appellant has failed to overcome the presumption that the latter is true. Therefore, under the presumption that counsel's conduct falls within the wide range of reasonable assistance, we conclude that counsel's emphasis on punishment, given the state of the evidence, was a plausible trial strategy that was not unreasonable.[2]

▮ During closing argument at the punishment phase on November 15, 1993, counsel remarked:

As we talked at the very beginning of this trial, I told you then that one thing that we were going to do is never take issue with the fact that Ray Thompson killed Betty Thompson, told you that to begin with and attempted as best we could to be as honest with you about the evidence in this case and not try to mislead you and try to be honest with you.

The standard of review for ineffective assistance of counsel during the punishment phase is less strict than the *Strickland* stan-

---

2. Assuming arguendo that counsel's remarks were inappropriate, were they prejudicial under the *Strickland* test? We are unable to conclude that absent these remarks, the outcome of the proceedings would have changed. The record reveals overwhelming evidence of appellant's guilt, and it is extremely doubtful that counsel's remarks made any difference whatsoever. We disagree with appellant's argument that the comments were prejudicial per se, thereby bypassing the second prong of the *Strickland* test. In order to establish prejudice per se, appellant must demonstrate that counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984). The record indicates, and appellant concedes, that counsel satisfactorily cross-examined state witnesses and made necessary objections. Therefore, it is clear that counsel's remarks did not "entirely" fail to challenge the prosecution.

dard. The test is: (1) whether counsel was reasonably likely to render effective assistance, and (2) whether counsel reasonably rendered effective assistance. *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex.Crim.App.1980). This standard does not mean errorless counsel or competency judged by hindsight. *Simms,* 848 S.W.2d at 758.

At the punishment stage, counsel clearly admitted that appellant killed his wife. However, the jury had already rendered its verdict, and the explicit admission could be viewed as a reasonable attempt to obtain a lesser punishment. We cannot say that counsel's comments, evidencing a strategy to obtain leniency, were unreasonable or unlikely to be effective under the *Duffy* test.

We conclude that appellant has failed to meet his burden of proof regarding counsel's conduct in point of error two. We overrule point of error two.

■ In point of error three, appellant argues that counsel failed to bring the issue of appellant's insanity or incompetency to the attention of the trial court.[3] Appellant's primary contention is that counsel knew of appellant's "severe psychological and/or psychiatric impediment" and should have had appellant psychiatrically evaluated.

As discussed in point of error one, the record contains no basis for a challenge to appellant's competency to stand trial. The affirmative defense of insanity was not raised at trial and the only evidence of insanity in the record is from lay testimony of little probative value. The issue before us is whether counsel was or should have been aware of an issue of insanity or incompetency to stand trial. We can find nothing in the record indicating counsel had any reason to question appellant's sanity or competency. Instead, appellant attempts to step outside the record to raise an issue of an unvacated, prior adjudication of incompetency. We decline to address an issue that is not firmly founded in the record.

■ Relying on *Blanco v. Singletary,* 943 F.2d 1477, 1503 (11th Cir.1991), appellant argues that counsel should have pursued mitigating evidence regarding appellant's mental state for use during the punishment phase. Appellant's reliance upon *Blanco* in this regard is inappropriate. In *Blanco,* the Eleventh Circuit held that counsel's failure to pursue mental health mitigating evidence was objectively unreasonable. *Id.* However, the record in *Blanco* indicated that helpful evidence existed regarding the defendant's mental health. Here, the record does not indicate that mitigating evidence existed. Therefore, we cannot determine if the failure to present such evidence constitutes ineffective assistance. *See Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex.Crim.App.1992) (failure to identify mitigating evidence precluded finding of ineffective counsel).

■ Absent evidence of insanity or incompetency to stand trial, a defendant does not have a due process right to have a psychiatrist assist in the evaluation, preparation, and presentation of the defendant's case. *DeFreece v. State,* 848 S.W.2d 150, 159 (Tex. Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 284, 126 L.Ed.2d 234 (1993); *Knight v. State,* 868 S.W.2d 21, 23 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). We appreciate the difficulty faced by an appellant on direct appeal, where it is common for the record to be sparse in these matters. However, appellant did not seek a hearing on this issue at trial and has not sought habeas corpus relief. Without a factual basis preserved in the record, appellant has not met his burden. We overrule point of error three.

■ In point of error four, appellant contends that counsel failed to adequately prepare for trial. Specifically, appellant alleges that counsel failed to file necessary motions, to request a hearing or examination regarding appellant's competency, to perform discovery, and to object to extraneous statements.

■ In reviewing each complaint, we must presume that counsel made all signifi-

---

**3.** Appellant requests that this Court consider his affidavit as evidence of ineffective assistance. We decline to consider the affidavit because it is outside the record.

cant decisions in the exercise of reasonable professional judgment. *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992). After a review of the record, it is clear that appellant has failed to rebut that presumption.

First, appellant argues that counsel should have filed more pre-trial motions and provides us with a list of such motions. However, appellant fails to identify a basis in the record for these motions and how these motions would have been beneficial. For example, appellant argues that a motion in limine should have been used to keep out court statements regarding extraneous offenses, but appellant fails to point to their occurrence in the record. Without a reference to the subject matter of the motions, we are unable to assess whether they should have been filed and whether a failure to do so constitutes ineffective counsel.

Second, appellant contends that counsel failed to request a hearing before and during trial on the issue of insanity or incompetence. We have addressed this topic in points of error one and three and decline to address it again here. We find no basis in the record for this claim.

Third, appellant argues that counsel should have performed discovery on witnesses called by the state. Appellant again fails to point to the record and indicate what information would have been gleaned and how the information would have been beneficial.

Fourth, appellant claims that counsel should have objected to extraneous statements made at trial. Isolated failures to object to the admission of improper evidence does not necessarily render counsel ineffective. *Segundo v. State,* 662 S.W.2d 798, 800 (Tex.App.—Corpus Christi 1983, pet. ref'd). Without reference to the record indicating the statements appellant finds objectionable, we are unable to assess his claim.

Under the presumption that counsel made all significant decisions in the exercise of reasonable professional judgment, we are unable with the record before us to sustain appellant's point of error. Mere assertions

without factual support in the record cannot provide evidentiary support for appellant's argument. We overrule point of error four.

We affirm.