**Justin Andrew KOSTURA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–08–00386–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 30, 2009.

Rehearing Overruled Aug. 20, 2009.

---

17. *Id.*

Clinard Handby, Woodlands, TX, for appellants.

Jessica Akins McDonald, Houston, TX, for appellees.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## MAJORITY OPINION

LESLIE B. YATES, Justice.

Appellant Justin Andrew Kostura was convicted following a bench trial of indecency with a child and sentenced to twenty-five years' imprisonment. In his sole issue on appeal, he contends that the trial court erred by not conducting a competency inquiry sua sponte. We affirm.

Appellant was released from prison in July of 2007. In September of 2007, the

State charged appellant with indecency with a child, his cousin's daughter, who was two years old at the time of the offense. At trial, the child's mother testified that she witnessed appellant place his hand inside the child's diaper and rub the child's genital area. Appellant testified that he had not rubbed the child's genitals, but had merely checked the side of the child's diaper to see if it was wet because he had smelled a stench. The trial court found appellant guilty and recessed the trial for preparation of a pre-sentencing investigation report (PSI).

To supplement the PSI, appellant's trial counsel prepared a Sentencing Memorandum, which summarized medical records from appellant's previous incarceration as follows:

Diagnosis;

Schizoaffective Disorder

Impulse Control Disorder

| 03/17/06 | [Appellant] striking knuckles against edge of bed. |
| 10/25/06 | [Appellant] derailing himself from sessions with hyperreligious and witchcraft themes, "the devil got him. . . ." |
| 10/27/06 | [Appellant] complaining about repetitive noises, said it's like physical pain |
| 11/02/06 | [Appellant] hearing voices for a long time, [appellant] requesting more medication |
| 11/03/06 | [Appellant] states stepfather abused him, also cut himself on the chest, hearing voices, feeling paranoid and depressed |
| 11/05/06 | Hears voices like a whisper |
| 11/07/06 | Having hallucinations, [appellant] is depressed, hears voices and sees shadows |
| 11/13/06 | I am real paranoid and hear voices, [appellant] states he is good and bad |
| 11/16/06 | Still hearing murmuring voices, mood changes to mad to sad, has not hurt himself since moving to Jester IV |
| 11/28/06 | Partial remission psychotic—hearing voices and tremors in hands |
| 09/27/07 | Mutilation to left upper chest, laceration 2 inches long |
| 10/06/07 | [Appellant] seen with laceration to left upper chest, [appellant] said "he had a fight with the devil." |

[Emphasis added]. However, the medical records summarized by and attached to the sentencing memorandum reveal that the last two incidents occurred in September and October of 2006, rather than in 2007, as reported by appellant's trial counsel. Also, the medical records and trial testimony show that appellant's previous incarceration ended in July of 2007.

At the punishment hearing, appellant's mother testified that he was treated at the Mental Health and Mental Retardation Authority (MHMRA) when he was younger. She also testified that appellant had been diagnosed with bipolar schizophrenia during his prior incarceration. Neither the parties nor the trial court raised the issue of appellant's competence to stand trial. Appellant now asserts that the trial court erred by not conducting a competency inquiry sua sponte.

We review a trial court's failure to conduct a competency inquiry for an abuse of discretion. *Lahood v. State*, 171 S.W.3d 613, 617–18 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd); *see also Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim.App.1999). A defendant is not competent to stand trial if he lacks (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. TEX.CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). If evidence raising a bona fide doubt as to the defendant's competence to stand trial comes to the trial court's attention, the trial court shall sua sponte "suggest that the defendant may be incompetent to stand trial" and then "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incom-

petent to stand trial." *Id.* art. 46B.004 (Vernon 2006); *See Fuller v. State,* 253 S.W.3d 220, 228 (Tex.Crim.App.2008). A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency." *Alcott v. State,* 51 S.W.3d 596, 599 n. 10 (Tex.Crim.App.2001). Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence." *Id.* Evidence is usually sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *McDaniel v. State,* 98 S.W.3d 704, 710 (Tex.Crim.App.2003).

■ Here, appellant argues that the sentencing memorandum contained evidence of recent severe mental illness and truly bizarre acts that should have created a bona fide doubt as to appellant's competency, such that the trial court erred by failing to conduct a competency inquiry sua sponte. As noted above, our review of the medical records summarized in the sentencing memorandum shows that appellant's trial counsel apparently erred by reporting two incidents as occurring in 2007, because the incidents were actually documented as occurring in 2006. Indeed, it is clear from the record that appellant's incarceration at the facility where the records were taken ended well before the dates reported in the summary. Appellant relies on that error to argue that the trial court was presented with evidence that appellant suffered from a recent, severe mental illness within four months of the trial date, February 15, 2008. However, the records reflect that the most recent incident summarized actually occurred over fourteen months prior to the date of trial. Therefore, while the evidence showed that appellant had been diagnosed with a severe mental illness, no evidence suggested the illness was recent. *See*

*Brown v. State,* 129 S.W.3d 762, 766 (Tex. App.-Houston [1st Dist.] 2004, no pet.) (finding no evidence of recent incompetency where evidence showed mental, behavioral, and cognitive impairments that did not occur within year of trial); *Thompson v. State,* 915 S.W.2d 897, 902 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (holding that depression and suicide attempts more than nine months prior to trial did not amount to recent severe mental illness and did not trigger competency inquiry).

Moreover, appellant's past history of mental illness and bizarre behavior did not mandate a competency inquiry absent evidence raising a bona fide doubt as to appellant's present ability to communicate or understand the proceedings. *See Lahood,* 171 S.W.3d at 618; *Brown,* 129 S.W.3d at 766. Appellant's attorney offered the evidence in the sentencing memorandum and through appellant's mother in mitigation of punishment. At no point did the attorney complain of any inability to communicate with appellant, and there is no indication in the record that appellant's behavior or comprehension during trial were abnormal. *See Thompson,* 915 S.W.2d at 902. To the contrary, the evidence produced at punishment was preceded by appellant's lucid trial testimony, which showed him to be communicative and capable of (1) addressing the State's accusations and evidence, (2) understanding the charges, and (3) mounting a plausible defense based on his reasonable alternative version of events and knowledge of medical terminology. *See Ryan v. State,* 937 S.W.2d 93, 106 (Tex.App.-Beaumont 1996, pet. ref'd) (holding that appellant's trial testimony is a "good barometer" of competence); *see also McDaniel,* 98 S.W.3d at 712 (noting, in reviewing whether evidence raised bona fide doubt requiring competency inquiry, that lucid testimony on the part of a defendant has often been viewed as important in

determining that defendant is competent to stand trial).

In support of his sole issue, appellant cites *Greene v. State*, 225 S.W.3d 324, 329 (Tex.App.-San Antonio 2007). But as appellant points out, Greene's trial testimony was "of the most bizarre quality," and although the *Greene* court noted the evidence of Greene's schizophrenia, it ultimately held that "Greene's *trial testimony* should have alerted the trial court of the possibility that Greene was incompetent." *Id.* at 329 (emphasis added). Unlike the situation presented in *Greene*, here appellant's trial testimony demonstrated that he was competent at trial, and the punishment evidence regarding his past impairments was insufficient to create a bona fide doubt mandating a competency inquiry. We therefore hold that the trial court did not abuse its discretion by failing to conduct such an inquiry sua sponte. We overrule appellant's sole issue.

Having overruled appellant's sole issue, we affirm the trial court's judgment.

SULLIVAN, J., concurring.

KENT C. SULLIVAN, Justice, concurring.

I respectfully concur. I agree with the majority that, on the record presented, the trial court did not abuse its discretion by not conducting a *sua sponte* competency inquiry because ultimately the evidence during trial did not suggest or otherwise raise a *bona fide* doubt about appellant's competency to stand trial. *See* Tex.Code Crim. Proc. Ann. art. 46B.004(b) (Vernon 2006). The earliest suggestion that appellant might be incompetent was during the sentencing process, when appellant's medical records showed a history of self-mutilation, hallucinations, and psychiatric diagnoses such as schizoaffective disorder, impulse control disorder, bipolar schizophrenia, and attention deficit hyperactive disorder. However, appellant's testimonial performance at trial,[1] as described in the majority's opinion, is a reasonable confirmation that he did not lack (1) a rational or factual understanding of the nature of the criminal proceedings, or (2) the ability to provide meaningful assistance to, or consult with, his lawyer. *See id.* art. 46B.003(a) (Vernon 2006).

However, in reaching this conclusion, we are obviously able to review appellant's performance during trial questioning through hindsight. Trial courts, of course, do not have that luxury. They need tools to allow them prospectively to predict the need for a more thorough competency inquiry.

To assist trial courts in making this determination, the Court of Criminal Appeals has offered a three-prong test: "Generally, to raise the issue [of incompetency], there must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation." *Mata v. State*, 632 S.W.2d 355, 359 (Tex. Crim.App.1982). Certainly, such evidence should be *sufficient* to raise a *bona fide* doubt. However, if the test mandates such evidence, arguably as a *prerequisite* to an informal competency inquiry, then the test may pose as many questions as it answers, including:

- While there may be some agreement that certain types of mental illness can be considered "severe" in nature, where is the line between "severe" and only "moderate" mental illness?

---

1. Appellant appropriately responded to questioning under both direct and cross examination, was rarely non-responsive, and testified in accordance with the apparent defensive strategy.

Is it fair to ask trial judges, who presumably lack medical or psychiatric training, to make this determination?

- Can a court fairly conclude, with any degree of confidence, that a once-ill (and potentially incompetent) defendant is now competent simply because his symptoms did not reappear immediately prior to trial?[2] Why should the mere passage of time, without more,[3] act to discount or disqualify the impact of evidence of a severe mental disorder that would otherwise compel a threshold inquiry as to competency?

- In the absence of training and adequate resources, how would a trial court determine the existence of "moderate" retardation? Is a proper determination dependent upon IQ testing and, if so, how does one account for malingering or intentional underperformance?[4]

As the Court of Criminal Appeals has observed, "we cannot lose sight of the rationale for requiring that the accused be competent to stand trial. The requirement that the accused be competent to stand trial is a *fundamental* component of the accused's right to a fair trial." *Alcott v. State*, 51 S.W.3d 596, 602 (Tex.Crim. App.2001) (en banc) (emphasis in original) (citing *Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). However, the current three-prong test may be less than effective in achieving this result. Therefore, it may be appropriate to consider a more modern and practical competency analysis to better equip trial judges to apply the statutory test for incompetency, that is, whether the defendant has a functional understanding of the proceedings against him and a sufficient present ability to consult with his attorney. *See* Tex.Code Crim. Proc. Ann. art. 46B.003(a).

For example, other jurisdictions have suggested specific factors for trial courts to consider in deciding whether a given defendant comprehends the nature of the criminal proceedings and can adequately consult with his attorney. *See State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538, 545 (1980) (Krivosha, C.J., concurring) (proposing up to twenty factors to consider); *see also Martin v. State*, 871 So.2d 693, 697 (Miss.2004) (five factors); *Stowe v. State*, 272 Ga. 866, 536 S.E.2d 506, 508–09 (2000), *overruled on other grounds by Sims v. State*, 279 Ga. 389, 614 S.E.2d 73 (2005) (discussing thirteen-point "McGarry Scale"); *State v. Garfoot*, 207 Wis.2d 214, 558 N.W.2d 626, 632 n. 7 (1997) (same);

2. In fact, courts have deemed a time period of only nine months not to be sufficiently "recent." *See Thompson v. State*, 915 S.W.2d 897, 902 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (involving defendant with depression and suicide attempts); *see also Brown v. State*, 129 S.W.3d 762, 766 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (holding that *bona fide* doubt was not raised as to defendant with "history of mental and behavioral problems ... including serious mental health issues" because of a lack of proof of incompetency in the year in which trial was held).

3. Here, the record reflects that appellant received some psychiatric treatment, including medication and group therapy, after the onset of symptoms.

4. *See, e.g., Sanders v. State*, No. 14–06–01130–CR, 2008 WL 2837330, at *3 (Tex.App.-Houston [14th Dist.] July 22, 2008, no pet.) (mem. op., not designated for publication) (addressing case in which defendant scored 52 on an IQ test, within the range for "moderate retardation," because of his efforts to "conceal whatever level of academic skills he possessed"); *Bowser v. State*, 816 S.W.2d 518, 524–25 (Tex.App.-Corpus Christi 1991, no pet.) (holding trial court did not err in failing to hold incompetency hearing for moderately retarded defendant with IQ score of 49).

*State v. Shields,* 593 A.2d 986, 1000 n. 23 (Del.Super.Ct.1990) (same). Consideration of these factors might be helpful in deciding not only how, but when, to conduct an informal inquiry. *See* Tex.Code Crim. Proc. Ann. arts. 46B.003(a), 46B.004(b).

Importantly, consideration of those additional factors would not change the outcome in this case because, as the majority explains, the appellate record affirmatively demonstrates appellant's familiarity with the criminal proceedings and his ability to formulate an effective defense strategy with his counsel. However, because the current three-factor test may not capably enable trial judges to resolve closer calls than this case, I respectfully concur.