In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00141-CR


______________________________




CHRISTOPHER D. MANNING, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 08-0332X




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Christopher D. Manning (1) entered a plea of no contest (2) to the charge of aggravated assault
with a deadly weapon, was tried by the court, convicted, and sentenced to nine years' imprisonment
in the Institutional Division of the Texas Department of Criminal Justice. (3) Manning appeals,
claiming the trial court erred in failing to sua sponte conduct an informal inquiry into his competence
at the time it accepted his plea and at the time of Manning's punishment hearing two months later. 
Because we hold that the trial court made sufficient inquiry at the time the plea was given, and
because there was no abuse of discretion in failing to conduct a second informal inquiry into
competency at the punishment hearing, we affirm the judgment of the trial court.

I. DISCUSSION 

 A. Competency 

 A trial court's decision not to conduct a competency inquiry is reviewed for an abuse of
discretion. Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); Gray v. State, 257 S.W.3d
825, 827 (Tex. App.--Texarkana 2008, pet. ref'd). The test for abuse of discretion is not whether,
in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; 
rather, it is a question of whether the trial court acted without reference to any guiding rules or
principles, and the mere fact that a trial court may decide a matter within its discretionary authority
differently than an appellate court does not demonstrate such an abuse. Howell v. State, 175 S.W.3d
786, 792 (Tex. Crim. App. 2005).

 When evidence "suggesting the defendant may be incompetent to stand trial comes to the
attention of the court, the court on its own motion shall suggest that the defendant may be
incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004(b) (Vernon 2006). The
standard for determining whether a trial court should conduct an inquiry into a defendant's
competence is that of a bona fide doubt. That is, if the judge has a bona fide doubt regarding the
defendant's competency to stand trial, the judge must conduct an inquiry to determine if there is
evidence that would support a finding of incompetence. Montoya v. State, 291 S.W.3d 420, 425
(Tex. Crim. App. 2009). (4) 

 A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency."
Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008), cert. denied, 129 S.Ct. 904 (2009). 
Evidence sufficient to create a bona fide doubt is that which shows a "recent severe mental illness,
at least moderate retardation, or truly bizarre acts by the defendant." Id.; see also Gray, 257 S.W.3d
at 829. 

 If, after an informal inquiry, the trial court determines that evidence exists to support a 
finding of incompetency, the trial court shall order an examination to determine whether the
defendant is incompetent to stand trial. See Tex. Code Crim. Proc. Ann. art. 46B.005(a) (Vernon
2006); Salahud-din v. State, 206 S.W.3d 203, 208 (Tex. App.--Corpus Christi 2006, pet. ref'd).

 A defendant is incompetent to stand trial if he or she does not have: (1) sufficient present
ability to consult with his or her lawyer with a reasonable degree of rational understanding; or (2) a
rational as well as factual understanding of the proceedings against him or her. See Tex. Code
Crim. Proc. Ann. art. 46B.003(a) (Vernon 2006). A defendant is presumed competent to stand trial
and shall be found competent to stand trial unless proved incompetent by a preponderance of the
evidence. See Tex. Code Crim. Proc. Ann. art 46B.003(b) (Vernon 2006).

 B. The Plea Hearing

 The plea hearing was conducted April 29, 2009. After discussing preliminary housekeeping
matters with counsel, the court sua sponte entered into the following dialogue with Manning before
accepting Manning's no contest plea:

 THE COURT: . . . Mr. Manning -- first of all, Mr. Manning, have you ever
been treated for any kind of mental illness?


 [MANNING]: Yes, sir, when I went to TYC [Texas Youth Commission].


 THE COURT: Okay. Let me ask you this: Did they undertake any
treatment?


 [MANNING]: No, sir.


 THE COURT: Okay. Are you under the influence of any drugs or alcohol
that would lead you to believe that you would not understand what the Court is
asking you today?


 [MANNING]: No, sir.


 THE COURT: Mr. Hurlburt, in your opinion, do you think that Mr. Manning
is competent?


 [DEFENSE COUNSEL]: Absolutely, Your Honor.


 . . . .


 THE COURT: Okay. Mr. Manning, we are here on three matters that you,
your attorney, and the State have agreed can be heard together, and I think it's your
understanding that you have no problem with it being heard together, also; is that
correct? 

 In other words, the Court can hear these three cases at the same time?


 [MANNING]: Yes, sir.


 . . . .


 THE COURT: . . . And I'm going to show you State's Exhibit No. 1, and this
document is headed at the top, Waiver of Jury Trial, but in particular, it looks like
your signature appears on this document in about three locations on the front side,
and it also appears on the second page about two times; is that correct?


 [MANNING]: Yes, sir.


 . . . .


 THE COURT: Now, as it relates to the documents in this matter, the exhibits
that have been entered into evidence here, did you get an opportunity, before signing
these documents to go over them in detail with your attorney, Mr. Hurlburt?


 [MANNING]: Yes, sir.


 THE COURT: Did he explain to you what they entailed and what was
involved in them and what they meant?


 [MANNING]: Yes, sir.


 THE COURT: Okay. You understand it?


 [MANNING]: Yes, sir.


 THE COURT: All right. Now, as to how it relates to your signature on these
documents, (5) did you sign these documents freely and voluntarily?


 [MANNING]: Yes, sir.


 THE COURT: You were not forced or coerced or any promises made to you
to sign these documents; is that correct?


 [MANNING]: No -- yes, sir.


 Based on these excerpts, it appears that Manning knew and understood that he was in court
on three different charges and that he voluntarily consented to the court hearing the charges together. 
Manning indicated that the documents bearing his signature were explained to him by counsel, that
he understood them, and that he freely and voluntarily signed them. Further, his attorney's response
indicated that Manning was competent. After this exchange, (6) during which the trial court had the
opportunity to observe Manning's behavior and demeanor, the court accepted Manning's plea of no
contest to the charges then pending. 

 Manning complains that the court failed to sua sponte conduct an informal inquiry into his
competency. The exchange quoted above indicates that the court did, in fact, conduct such an
inquiry. There are no "red flags" uncovered by the inquiry or by the exchange between Manning and
the court that would indicate a "recent severe mental illness, at least moderate retardation, or truly
bizarre acts by the defendant." Fuller, 253 S.W.3d at 228. Manning's statement that he was treated
for mental illness while at TYC does not raise the issue of competency. In order to raise the issue
of competency by means of the defendant's past mental health history, there generally must be
evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation. 
Moore, 999 S.W.2d at 395. Said another way, evidence of a defendant's past mental illness is
evidence of incompetence only where the past mental illness interferes with the defendant's present
ability to communicate with his or her attorney or with the defendant's understanding of the
proceedings against him or her. See Baldwin v. State, 227 S.W.3d 251, 253 (Tex. App.--San
Antonio 2007, no pet.). The record shows no indication of recent severe mental illness, moderate
retardation, or truly bizarre acts, and there was no suggestion by Manning's attorney, the State, or the
trial court, all of whom observed Manning's behavior at the hearing, that Manning appeared unable
to understand the proceedings.

 Because there is no evidence in the record of the April 29, 2009, hearing to rebut the
presumption of competence, the trial court was not required to make further inquiry into Manning's
competence. (7) The trial court, therefore, properly accepted Manning's plea of no contest without
further inquiry into competency. 

 C. The Punishment Hearing

 In his second point of error, Manning claims the trial court erred in failing to sua sponte
conduct an informal inquiry into his competency during the punishment phase of his trial. The
question here is whether the trial court abused its discretion when in light of the evidence presented
at punishment, it did not conduct a further competency inquiry at that time.

 The punishment hearing took place two months after the plea hearing, on June 30, 2009. (8)
Ruby Annette Williams, Manning's mother, was the lone testifying witness. Williams testified that
Manning was struck by a vehicle three times as a child. The most serious of this series of accidents
occurred when Manning was struck by a vehicle at the age of eight, causing injuries to his head, leg,
and face. The long-term effects of Manning's head injuries included a change in behavior such that
Manning experienced difficulty socializing, struggled with mental problems, and experienced
headaches. These ongoing problems led to frequent hospitalizations and psychiatric counseling. 
Two additional accidents in the following two years caused additional medical problems. As a
result, Manning was prescribed multiple medications, (9) which he continued to take for several years. (10) 
Williams described Manning as "slow," not having any friends, and as having been diagnosed with
bipolar disorder at some point in the past. She believed Manning to be suicidal on the day the
original punishment hearing was to take place. (11) 

 New evidence presented at the punishment hearing included information regarding Manning's
childhood injuries, a diagnosis of bipolar disorder at some unknown time in the past, past suicidal
behavior, and his mother's belief that Manning was suicidal earlier that same month. (12) This evidence
notwithstanding, there was no evidence presented at the punishment hearing of "at least moderate
retardation or truly bizarre acts" on Manning's part. The only new issue raised by this evidence is
whether Williams' belief that Manning was suicidal approximately two weeks before the punishment
hearing is sufficient to indicate that Manning suffered from a "recent severe mental illness." 

 There is nothing in the record to confirm that Manning was indeed suicidal before the
punishment hearing other than Williams' subjective belief that such was the case. Even if there was
evidence that Manning was clinically diagnosed by a psychiatrist as suicidal, that would not
constitute evidence of incompetency to stand trial. Symptoms of depression and evidence of suicide
attempts do not amount to evidence of "recent severe mental illness." Thompson v. State, 915
S.W.2d 897, 902 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd).

 Manning's previous diagnosis of bipolar disorder and depression, together with Williams'
subjective belief that Manning was suicidal approximately two weeks before the punishment hearing
implicate Manning's competence to stand trial only if they impact his "present ability to consult with
his counsel with a reasonable degree of understanding" and his "rational and factual understanding
of the proceedings against him." See Brown v. State, 129 S.W.3d 762, 766 (Tex. App.--Houston
[1st Dist.] 2004, no pet.) (holding defendant's previous mental and behavioral impairments, inability
to recall past events, inability to recall circumstances of charged offense, and depression did not
establish required elements of competency); Reeves v. State, 46 S.W.3d 397, 399-400 (Tex.
App.--Texarkana 2001, pet. dism'd) (evidence that defendant's birth mother drank heavily while
pregnant with defendant and of defendant's drug addiction and suicide attempt did not reflect on
defendant's ability to understand and participate in proceedings against her); Rice v. State, 991
S.W.2d 953, 957 (Tex. App.--Fort Worth 1999, pet. ref'd) (holding competency test is not whether
someone labored under mental, behavioral, or psychological impairment); Townsend v. State, 949
S.W.2d 24, 27 (Tex. App.--San Antonio 1997, no pet.) (holding competency test is not met by
evidence of depression or mental illness). Given the informal inquiry made by the trial court at the
time it took Manning's plea, the evidence presented at the punishment hearing was not sufficiently
compelling to require the trial court to further inquire into Manning's ability to consult with counsel
or understand the proceedings against him. This is particularly true in light of the fact that Manning's
own counsel did not raise the issue of Manning's competence to stand trial at either the hearing
April 29 or the hearing June 30. (13) 

II. CONCLUSION

 Because nothing in the record raised the issue of Manning's ability to consult with his counsel
or his ability to understand the proceedings and the charges against him at any time during the
proceedings, we hold that the evidence presented during the punishment phase of the trial was
insufficient to suggest that Manning was incompetent to stand trial. See Tex. Code Crim. Proc.
Ann. arts. 46B.003(a), 46B.004(c). After reviewing the entire record from the plea hearing and the
punishment phase of trial, we cannot say that the trial court abused its discretion by failing to
conduct further inquiry into Manning's competency. The trial court's informal inquiry set forth above
established that Manning was not suffering from recent severe mental illness or moderate retardation,
that he understood the charges he was facing, that he had been able to communicate in a meaningful
way with his attorney, and that his own counsel had no question about his competence to stand trial. 
The informal competency inquiry conducted by the trial court satisfied Chapter 46B. 

 Accordingly, we affirm the judgment of the trial court.




 Jack Carter

 Justice


Date Submitted: November 3, 2009

Date Decided: November 12, 2009


Do Not Publish
1. We have before us three companion appeals involving the same appellant. His name is
spelled differently in each indictment and trial court judgment. Therefore, in each opinion, we have
used the spelling used by the trial court in those documents.
2. A plea of no contest is a criminal defendant's plea "that, while not admitting guilt, the
defendant will not dispute the charge . . . . Also termed nolo contendre; non vult contendre." 
Black's Law Dictionary 1147, 1159 (9th ed. 2009).
3. Manning also entered no contest pleas to two additional indictments alleging possession of
a firearm at a prohibited place and debit card abuse. Manning was found guilty on both charges.
Competency issues with respect to these cases are the subject of separate appeals.
4. Under the former competency statute, Tex. Code Crim. Proc. Ann. art. 46.02, § 2(b),
repealed by Act of Apr. 30, 2003, 78th Leg., R.S., ch. 35, § 15, 2003 Tex. Gen. Laws 57, 72
(effective Jan. 1, 2004), a competency hearing was required if the evidence was sufficient to raise
a bona fide doubt in the mind of the judge about the defendant's legal competency. Alcott v. State,
51 S.W.3d 596, 601 (Tex. Crim. App. 2001). Montoya resolved any uncertainty regarding the
continued viability of the bona fide doubt standard under Article 46B.004 of the Texas Code of
Criminal Procedure. Montoya, 291 S.W.3d at 424.
5. The documents referenced by the court include (in addition to the waiver of jury trial)
written felony admonitions to the defendant for the offense of aggravated assault and the trial court's
certification of defendant's right to appeal. 
6. The quoted exchange between the court and Manning represents only a portion of the actual
exchange that took place. The court went into great detail to explain Manning's right to a jury trial,
that he was waiving that right and the consequences of doing so; the court further explained the
effect of a no contest plea and the consequence of the acceptance of that plea by the court; also
before accepting Manning's plea, the court explained the sentencing range for each offense. As to
each of these matters, Manning indicated that he knew and understood what he was doing and the
effect of his actions. 
7. We note the similarity of this case to that of Gray, 257 S.W.3d 825, wherein we determined
that there was no evidence in the record to rebut the presumption of competence such that the trial
court would have been required to make further inquiry into the defendant's competence. 
8. Sentencing was initially scheduled for June 16, 2009, but was continued because Manning
failed to appear for the hearing.
9. Manning was prescribed Adderall, Seroquel, and Depakote. 
10. Manning was not taking his medications at the time of the hearing, and had not done so for
approximately one year. Manning was eighteen years old at the time of the hearing on sentencing. 
11. Williams offered very little explanation for this statement, except to explain that Manning
had been suicidal in the past and that he did not want to go to prison.
12. Williams also testified that she was confused about the time of the original sentencing
hearing, believing the hearing to be at 1:30 p.m., rather than at 3:00 p.m. When Manning left the
house at 1:15 p.m., she became worried that he might be "running off to harm himself." 
13. The issue of Manning's competence was likewise not raised by the State.



ed that this assignment shall continue after the specified period of time as may
be necessary for the assigned judge to complete trial of any case or cases begun
during this period, and to pass on motions for new trial and all other matters growing
out of cases tried by the judge herein assigned during this period.

 

 CONDITION(S) OF ASSIGNMENT [IF ANY]:

 

 No. 7499, Martin Ramirez, Guardian of the Person and Estate of Javier Ivan
Sandoval, a Minor, vs. Rego Company, et al.

Id. A distinction between the above language and the language at issue here is readily apparent: in
Salinas, there is no language in the first paragraph which serves to define the date the assignment
ends; in the case at bar, the assignment is "for the period of 1 [day]." The Salinas court did not
explain whether any proceedings were actually held in the litigation on the date referenced. See id. 
Nonetheless, the court read the assignment as giving the visiting judge the authority to hear the
personal injury case: "The record is clear that Judge Salinas was assigned to hear the underlying
personal injury lawsuit and not to exercise general jurisdiction as the Judge of the 229th District
Court." Id. The Corpus Christi Court went on to determine whether the assignment order gave
authority which would include the capacity to preside over the ancillary litigation involving the trust
created as a result of the personal injury litigation; it concluded that it did not. Id. While Salinas
involves slightly different issues, what is valuable to us in the analysis is the court's reading of the
order of assignment itself. Since there appeared to have been no evidence that the visiting judge
presided over any matter relating to the referenced cause number on September 29, 1986, we
understand the date that the authority is given to be less important where, as here, the record suggests
that the assignment order was designed to give the authority to hear a particular case. Of course, a
court looking at a general assignment to a court for a period of days and without reference to a
particular case would be far more concerned with the dates stated in the assignment order.

 We read the assignment order at issue as one that, on February 28, 2007, gave Judge Banner
the authority to hear the named case on its merits. Several considerations inform our conclusion. 
First, we are bound to read the assignment order as a whole and must keep in mind that form should
not prevail over substance. See B.F.B., 241 S.W.3d at 646. To read the order as Richardson
suggests, we would have to ignore the conditions of the assignment: "To hear Cause No. 99C985-202; Southwest Construction Receivables, LTD, et al vs. Regions Bank." Since we must consider
the order as a whole, we cannot simply ignore that language.

 Further, because we must consider the context in which the order was issued, we will not
read the order as an essentially useless exercise based on a contingency that a multi-party case (one
which has persisted in litigation for almost ten years) would inevitably go to trial on the very date
specified. The date contained in the order of assignment (February 28, 2007) (8) is the same date that
it was signed by the administrative judge in Dallas; it was not filed with the Bowie County District
Clerk's Office until March 6, 2008. In order to read the assignment order as literally as we are being
asked would have us determine that the authority of Judge Banner to act under the order expired on
the same day that it was signed and before it was even received; this would render the order virtually
nonsensical and incapable of the use for which it was intended. To read the order as being without
practical effect (i.e., having expired because certain anticipated contingencies failed to materialize)
would force us to engage in a very limited, perhaps disingenuous, reading of a record that certainly
indicates that the order was designed to assign Judge Banner to hear the case from which Judge
Pesek had recused himself. We add that since Judge Pesek had recused himself from the case,
Richardson's reading would have the effect of leaving the litigation without a presiding judge for an
indefinite period of time. As mentioned previously, a literal reading of the position of Richardson
as to the lapse of Judge Banner's authority would also lead one to believe that Judge Banner would
no longer have had the authority to enter an order which acknowledged himself as no longer the
judge authorized to hear the case. If Richardson were correct, in other words, would anything signed
by Banner have any force or effect or would it be a nullity? 

 The most reasonable reading of the substance of this order within the context in which it was
issued is that Judge Banner was assigned to hear this case when Judge Pesek recused himself. By
reconciling the language in the order taken as a whole and considering the context in which the order
was issued, we conclude that Judge Banner has authority, pursuant to Judge Ovard's assignment
order, to hear the underlying cause on its merits.

III. Questionable Availability of the Writ of Prohibition

 Richardson's petition seeks issuance of both a writ of mandamus and a writ of prohibition. 
The same principles control the use of both writs when they are invoked to seek to remedy the
unlawful assumption of jurisdiction (9) by an inferior court. See Tilton v. Marshall, 925 S.W.2d 672,
676 n.4 (Tex. 1996); Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 309 n.12 (Tex. 1994). (10) 
A writ of prohibition directs a lower court to refrain from doing something; a writ of mandamus
generally directs a lower court to do something. See Tilton, 925 S.W.2d at 676 n.4. The purpose of
the writ of prohibition is to enable a superior court to protect and enforce its jurisdiction and
judgments. Holloway v. Fifth Court of Appeals, 767 S.W.2d 680, 683 (Tex. 1989); Browne v. Rowe,
10 Tex. 183, 184 (1853). The writ is typically used to protect the subject matter of an appeal or to
prohibit an unlawful interference with the enforcement of a superior court's orders and judgments. 
Holloway, 767 S.W.2d at 683; Tex. Employers' Ins. Ass'n v. Kirby, 137 Tex. 106, 152 S.W.2d 1073,
1073 (1941).

 However, the Texas Supreme Court has held that a petition for a writ of prohibition is an
ancillary proceeding that is invoked in aid of an appellate court's jurisdiction which has otherwise
been properly invoked, not an independent proceeding brought to prohibit an action. See Kirby, 152
S.W.2d 1073, 1073. With that, a writ of prohibition is appropriate only after an appellate court's
jurisdiction has been invoked on independent grounds and then only in aid of that jurisdiction. See
id.

 Therefore, a court of appeals does not have jurisdiction, absent actual jurisdiction of a
pending proceeding, to issue a writ of prohibition requiring that a trial court refrain from performing
a future act. See id.; In re Nguyen, 155 S.W.3d 191, 194 (Tex. App.--Tyler 2003, orig. proceeding);
Lesikar v. Anthony, 750 S.W.2d 338 (Tex. App.--Houston [1st Dist.] 1988, orig. proceeding). 
Because we do not have actual jurisdiction over a pending proceeding in this case, we have no
jurisdiction to protect by way of writ of prohibition.

 Again, a writ of prohibition may also be used to prohibit an unlawful interference with the
enforcement of a superior court's orders and judgments. See Holloway, 767 S.W.2d at 682. Such
a purpose is also inapplicable here. We note that our dismissal of the appeal from the 2005 summary
judgment concluded that the judgment was only interlocutory because it had not disposed of claims
against a proper party. (11) Judge Banner has taken no action that would interfere with this Court's
judgment. To conclude otherwise would run afoul of the Texas Supreme Court's reasoning in
Holloway v. Fifth Court of Appeals where the Texas Supreme Court concluded that the Dallas Court
erroneously issued a writ of prohibition:

 When an appellate court considers the merits of an action and renders a judgment of
affirmance or reversal, it has a judgment which under the appropriate circumstances
can be protected by writ of prohibition. Houston Oil Co. v. Village Mills Co., 123
Tex. 253, 259-60, 71 S.W.2d 1087, 1089 (1934). The court of appeals in Humble
Exploration Company v. Browning, however, did not rule on the merits. It dismissed
the appeal. Granted the court wrote on the collateral matter of the trial court's
jurisdiction, but the writing was not material to, nor incorporated in, its judgment of
dismissal. Even had the court of appeals chosen to rule on the merits of the appeal
in its judgment of dismissal, such ruling would have been "mere surplusage"
incapable of enforcement by the extraordinary writ of prohibition. Fitch v.
International Harvester Co., 163 Tex. 221, 221, 354 S.W.2d 372, 373 (1962). 


 Appellate courts have no authority to issue writs of prohibition to protect
unappealed district court judgments. Texas Employers' Ins. Ass'n v. Kirby, 137 Tex.
106, 152 S.W.2d 1073 (1941). Although the dismissal of an appeal may have the
same practical affect [sic] as an affirmance of the lower court's judgment, these two
appellate judgments are not in law the same. United States v. Gomez, 64 U.S. (23
How.) 326, 339-40, 16 L. Ed. 552, 587 (1860). A dismissal of an appeal does not
merge the judgment of the trial court into the judgment of the appellate court and
does not vest the appellate court with authority to issue extraordinary writs to protect
the judgment of the trial court. Oilmen's Reciprocal Ass'n v. Coe, 29 S.W.2d 430
(Tex. Civ. App.--Eastland 1930, writ ref'd); Cunningham v. Universal Credit Co.,
92 S.W.2d 1097 (Tex. Civ. App.--Fort Worth 1936, no writ). 

Holloway, 767 S.W.2d at 683.

 Because we do not have jurisdiction over a pending proceeding in this case and because the
trial court's actions do not interfere with a judgment of this Court, we consider the availability of a
writ of prohibition here questionable. We believe our jurisdiction here to be limited to mandamus
authority. See Tex. Gov't Code Ann. § 22.221(b) (Vernon 2004). 

 We question the availability of a writ of prohibition in this situation when there is no pending
appeal in the matter, but do acknowledge that the Texas Supreme Court has held that a writ of
prohibition and a writ of mandamus are appropriate when the trial court acts without jurisdiction to
do so. See State Bar of Tex. v. Jefferson, 942 S.W.2d 575, 576 (Tex. 1997); Board of Disciplinary
Appeals v. McFall, 888 S.W.2d 471, 472 (Tex. 1994). While the issue here is more accurately
characterized as a challenge to the trial judge's authority rather than a challenge to the trial court's
jurisdiction, we see that Jefferson and McFall allow room to argue that a writ of prohibition is
equally appropriate here. See also Akin v. Tipps, 668 S.W.2d 432, 434 (Tex. App.--Dallas 1984,
orig. proceeding). Further, jurisdiction over the petition for writ of mandamus may permit a court
to exercise jurisdiction over the traditionally ancillary proceeding seeking writ of prohibition. So,
to the extent that a writ of prohibition is available as ancillary to our jurisdiction over Richardson
and Regions' petition for writ of mandamus, we conclude that, for the same reasons that Richardson
and Regions have not shown they are entitled to mandamus relief, they, likewise, are not entitled to
a writ of prohibition.

 We, therefore, deny Richardson and Regions' petition for writ of mandamus and writ of
prohibition.

 Subsequent to the filing of the petition for writ of mandamus and for writ of prohibition, we
received an application from Richardson for an emergency stay of the underlying trial court
proceedings. Because the mandamus and prohibition relief is being denied, we also deny the
issuance of the emergency stay which was requested.




 Bailey C. Moseley

 Justice


Date Submitted: April 24, 2008

Date Decided: April 25, 2008

1. Sw. Constr. Receivables, Ltd. v. Regions Bank, 162 S.W.3d 859 (Tex. App.--Texarkana
2005, pet. denied). The details of the nearly ten years of litigation leading up to this point are not
necessary to this opinion, but a thorough statement of the facts in the underlying litigation is reflected
in that opinion.
2. Rule 18a deals specifically with the procedure to be followed when seeking to have the trial
judge "before whom the case is pending" removed from hearing the case. A party may file a motion
advancing "any disability of the judge to sit in the case." Tex. R. Civ. P. 18a(a).
3. At the annual meeting of the Council of Presiding Judges, the Council is directed to
"consider uniformity in the administration of Chapter 74 of the Texas Government Code in the
various administrative regions." Tex. R. Jud. Admin. 3(e)(3).
4. The handwritten date of entry made by Judge Ovard in the order is obviously in error, stating
that it was signed in 2008 and not in 2007. This blatant mistake was not raised as error and is not
relevant.
5. We observe that since Richardson and Regions maintained that Judge Banner's authority had
already expired, then they were faced with seeking an order from the very judge whose authority they
maintained had expired under the terms of his appointment; this is something of a classic "Catch 22"
situation.
6. Although the Republic Parking opinion does not spell this out, it is assumed from the
context that the "Judge McCorkle" to whom reference is made therein is Judge Lamar McCorkle,
presiding judge of the 133rd Judicial District Court. 
7. Since Judge McCorkle was the regularly elected and presiding judge of the court in which
the case was pending, Republic Parking did not challenge his qualification or his authority in general. 
Instead, it argued that the general assignment gave exclusive jurisdiction to visiting Judge Andell. 
Although the Republic Parking court relied on In re Cook Children's Medical Center, 33 S.W.3d
460, 463 (Tex. App.--Fort Worth 2000, orig. proceeding), for the proposition that general order
allowing assignment to continue on all matters "growing out of any cause heard" may give a visiting
judge that hears any motion in a cause exclusive jurisdiction over that cause, it does express some
concern with that position. See 60 S.W.3d at 879-80 n.5. Indeed, the Fort Worth Court reconsidered
that position and concluded that Cook's Children's Medical Center was "wrongly decided." Davis
v. Crist Indus., Inc., 98 S.W.3d 338, 342 (Tex. App.--Fort Worth 2003, pet. denied). 
8. See footnote 4 above.
9. As will be discussed later, we use this term not to suggest that this issue implicates the
jurisdiction of the trial court. Here, the term is used only in explaining the purpose and requirements
for issuance of a writ of prohibition.
10. The Texas Supreme Court noted that, by enacting Section 51.014(a)(7) of the Texas Civil
Practice and Remedies Code, the Legislature had rejected its position in Canadian Helicopters that
interlocutory review of the grant or denial of a special appearance should not generally be available. 
In re AIU Ins. Co., 148 S.W.3d 109, 119 (Tex. 2004).
11. More specifically, this Court dismissed the previous appeal for want of jurisdiction:


 Because we have held the trial court erred by ruling, as a matter of law, that McNew
was not a proper party to the suit, and because Appellants' notice of nonsuit did not
resolve their claims against McNew, the trial court's award of summary judgment in
this case does not dispose of all the parties or claims. None of the statutory
exceptions that grant us jurisdiction to hear certain interlocutory appeals are
applicable to this case. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon
Supp. 2004-2005). Therefore, we are without jurisdiction to consider Appellants'
remaining points of error. Cf. Brooks v. Pep Boys Auto. Supercenters, 104 S.W.3d
656, 660-61 (Tex. App.--Houston [1st Dist.] 2003, no pet.). 


Sw. Constr. Receivables, Ltd., 162 S.W.3d at 868.