Affirmed and Memorandum Opinion filed October 7, 2010.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00042-CR

NO. 14-09-00043-CR



 

Charles Wayne Williams, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 221st
District Court

Montgomery County, Texas

Trial Court Cause Nos. 08-06-05878
CR & 08-06-05879 CR



 

MEMORANDUM OPINION

 

Appellant Charles Wayne Williams was convicted in a
bench trial of burglary of habitation in cause number 08-06-05878-CR and
assessed punishment of 30 years’ confinement.  Appellant also was convicted of
aggravated assault with a deadly weapon, unlawful possession of a firearm by a
felon, and cruelty to non-livestock animals in cause number 08-06-05879-CR; his
punishment for these offenses was assessed as confinement for 30 years, 20
years, and two years, respectively.  The trial court ordered the sentences to be
served concurrently.  Appellant contends on appeal that (1) the trial court
erred by failing to conduct a sua sponte inquiry into appellant’s
competency to stand trial; and (2) his jury trial waiver was involuntary.  We
affirm.

Background

Appellant was arrested in May 2008 for burglary of
habitation and indicted for that offense in June 2008.  He also was indicted for
aggravated assault with a deadly weapon, unlawful possession of a firearm by a
felon, and cruelty to non-livestock animals.  The indictments arose in
connection with a May 3, 2008 incident in which appellant was identified as the
assailant who knocked on the door of a former neighbor’s mobile home at 3 a.m.;
entered; pointed a pistol at the occupant; and subsequently fired shots at the
occupant, striking and killing the occupant’s dog.

Appellant pleaded not guilty to all charges and true
to the enhancement paragraphs.  Appellant remained in custody in the Montgomery
County Jail while awaiting trial.

On August 29, 2008, appellant filed a motion asking
for his trial to be scheduled before September 22, 2008.  Appellant contended he
was not receiving proper medical treatment in jail for an open wound related to
severe burns he received in a 2006 car accident.

Appellant asserted that the jail’s medical staff failed
to change the bandages on an open, infected wound on his left foot as
frequently as required.  He also asserted that the improperly treated foot wound
left him vulnerable to further injury from a bone infection in his leg.  The
trial court issued a scheduling order on September 24, 2008 setting the trial
for October 13, 2008.

On October 1, 2008, appellant filed a motion to
continue the trial so he could seek medical attention.  Appellant’s trial
counsel subsequently filed a motion to withdraw on grounds that he could not
communicate effectively with appellant and thus could not provide adequate
representation.

At a hearing conducted on October 8, 2008, trial
counsel said he was unable to meet and communicate with appellant:  “. . . I
asked for a continuance because I can’t meet with my client.  He just — he
won’t talk about anything but his leg.  He is trying to save his leg.”  Trial
counsel stated, “All I am saying, Judge, is I can’t meet with him because he
says he is in pain and he can’t communicate very well.”

Trial counsel also stated:  “He’s real worried about
losing his leg.  He’s already lost his arm.  And the infection thing, if you
don’t get that treated, he will lose his leg.  That is also my speedy trial
motion, the one I talked about back in August.”  The trial court granted the
continuance and reset the trial for November 4, 2008.

During the October 8 hearing, appellant waived his
right to a jury trial.  Trial counsel stated:  “And I want to also get it on
the record, Mr. Williams, that he is going to waive a trial by jury . . . .” 
Appellant testified as follows at the October 8 hearing in response to
questioning by his trial counsel:

Q.        And you know in a criminal trial you have a right
to a trial by jury and a right to be tried by the Judge; is that correct? 

A.        Yes, sir.

Q.        I went over that with you. And you’re telling
this Judge that what you want to do on both of these cases, because we don’t
have an agreement, let the Judge — Judge Stovall hear the facts and decide what
happened and what she wants to do. Is that what you want to do?

A.        I want something done about my foot, ma’am. I
have been there eight months and the medical department in the jail has
postponed it, postponed it, postponed it. That’s my main concern, man. I have
been through a lot. I don’t want to lose my leg. I have lost my arm.  Make
these people get me in there and get this taken care of, man.

Q.        We are going to do that as soon as you get that
taken care of.  Do you want a trial by the Judge or do you want a trial by the
jury because — 

A.        I want to go before Ms. Stovall and have her hear
the facts.

Q.        Let her hear the facts and decide the punishment
and everything?  

A.        That’s - - 

Q.        That’s what you want to do?

A.        Yes, sir.

Q.        Cause No. 08-06-05878.  You are going to do it on
that one or do you want to do it also on Cause No. 08-06-05879?  Is that
correct?

A.        Yes.

Q.        And you know — you know what you are charged
with; is that right?

A.        Yes, sir.

Q.        I will give you a copy. You say you waive your
right to jury trial and it says I want a bench trial. You know that means a
trial by Judge. Is that what you want to do?

A.        Yes, sir.

Appellant executed two
written jury trial waivers on the same date.  The waivers were signed by
appellant, his attorney, and the State, and were approved by the trial court. 
Both waivers stated that appellant had been advised by counsel of his right to
a jury trial, and that he voluntarily waived his right to a jury trial.

On October 17, 2008, appellant filed a motion requesting
release on a personal bond so he could seek medical attention.  A hearing held
on October 29, 2008 addressed appellant’s request and his complaints regarding the
adequacy of his medical treatment in jail.

Appellant testified at the October 29 hearing and described
the severity of his burn injuries.  He also testified as follows in response to
questioning by his trial counsel:

Q.        How do you feel today?

A.        Well, I feel the same way I’ve felt for — you
know, it’s gotten worse.  Infection is getting worse.  I am in constant pain,
and it seems like they are all very aware and been aware since I got there on
the medical record that I have an infection in the bone and this medical
department has slowly just been taking their time, to get me to fight the
infection on my own. I have my own insurance that are treating me.  I can’t go
on with this stuff, man, with nothing. I can’t even think straight every day. I
am in constant pain, ma’am.  I am afraid I am going to lose my freaking leg. I
have lost my arm. I have been through a lot.  I want to ask somebody to do something
about it, man.

Q.        I understand.  Are you worried about losing your
leg or is it the pain? What is it?

A.        Well, it’s both. I
am in constant pain. On top of that, I’m worried about I am going to lose — there
is a good chance I am going to lose my leg, and I will lose more of it the
longer I go on.  The more the infection moves up the bone in my leg, it seems —

*                                              *                                              *

Q.        . . . in your own words, what do you have to do
to stop the pain?  What do you have to do?

A.        I have to have surgery.  It’s depending upon
surgery.  That is the only thing that is going to maybe might save my leg, and
it might not.  But it is not going to ever stop until I have the surgery.  If I
have to lose my leg they will amputate part of my leg.  Once that heals up and
I go through all the different treatments, then I might — I will deal with a
little bit of pain the rest of my life.  Nowhere near what I am going through
now.  This is suffering.

*                                              *                                              *

Q.        Okay.  Is it fair to say that we can’t even
communicate because you have pain all the time now?  I can’t talk to you very
much?

A.        That’s very fair to say.

*                                              *                                              *

Q.        Are you still in pain today?

A.        Yes, sir, I am.

Jail medical supervisor Edsel
West testified at the October 29 hearing about efforts to address appellant’s
medical condition during his pretrial incarceration.  These efforts included requesting
medical records from Memorial Hermann Hospital; providing pain medicine
allowable under the jail’s non-narcotics policy; transporting appellant to multiple
appointments with treating physicians outside the jail; transferring appellant
to a specially equipped cell to accommodate his disabilities; and later transferring
him to a cell in the infirmary to facilitate wound care.  West testified that
the jail had not received any directives for surgery from appellant’s treating
physicians.  The jail’s documentation did not reflect that wound care had been administered
to appellant on three days during a three-month period.  The trial court denied
appellant’s motion for release on a personal bond.

On October 31, 2008, appellant filed a motion for
continuance on grounds that his infected foot wound was draining heavily and
required daily bandage changes.  The motion contended that trial counsel could
not communicate effectively with appellant because appellant was in constant
pain and could not obtain effective pain-relieving medication in jail.  The
trial court conducted a hearing on that motion on November 4, 2008.

At the November 4 hearing, trial counsel requested
that appellant be released to obtain medical treatment for his leg and pain medication. 
Trial counsel contended that he was unable to effectively communicate with
appellant because of appellant’s pain.  The trial court also heard from the
jail medical supervisor, who informed the judge that appellant was receiving an
opiate-based pain-killer; residing in the medical unit; and receiving daily
bandage changes.  The court denied appellant’s request for release and
continued the trial, which was reset for November 10, 2008.

At the beginning of the November 10 bench trial, the
following exchange occurred between appellant and his trial counsel:

Q.        We talked many times about we have the absolute
Constitutional right to have a trial by jury and trial by Judge. I went over
those rights with you, did I not? 

A.        Yes.

Q.        Did you understand those rights?

A.        Yes, sir.

Q.        Okay.  And I’m thinking a couple of weeks ago we
signed a waiver of trial by jury and you signed that waiver; is that correct?

A.        Yes, sir.

Q.        Did you do it freely and voluntarily?

A.        Yes, sir, I did.

Q.        Okay.  Did anyone force you to do that?

A.        No, sir.

Q.        Okay.  And today you still have that right.  Are
you telling the Court that you still want to go to trial by judge? 

A.        Yes, I do.

Q.        Just briefly, why do you want to go to the Judge
for trial?

A.        The reason I want to go before the Judge is due
to my accident, the way I look, I’m afraid that — I am burned up.  My face, my
nose, my ears. I am missing my arm.  I’m afraid that appearance would
definitely intimidate the jurors and I don’t think the Judge will judge me on
my appearance. 

Q.        Okay.  So, that’s — that is why you want to go
with the Judge.

A.        And I know that — I also know that the Judge will
not go on what they hearsay.  I want to make sure is goes by ways of the law. 

Q.        Okay.  So today you want to still proceed with
trial by Judge Stovall; is that correct?

A.        Yes, sir.  That’s correct. 

Q.        Okay.

Appellant later testified in
detail at trial regarding his recollection of the events on May 3, 2008 leading
up to his arrest.  He demonstrated no difficulty in understanding and answering
questions during trial.  In response to a question asking whether he previously
had sold drugs to the mobile home’s occupant, appellant denied doing so and
testified, “I’m not an ignorant man.”  He continued, “I have been to prison
before for selling drugs. I am not going to go out there where I know a
landlord is an ex-police officer and force drugs on people or even let them
know that I did sell drugs.”  He added, “I’ve got that much snap, you know.”

The trial judge found appellant guilty of all
offenses charged in the indictments and sentenced appellant after a punishment
hearing.  The trial court certified appellant’s right of appeal.  On November
11, 2008, appellant timely moved for a new trial based on contentions that (1)
“[t]he verdict in this cause is contrary to the law and the evidence;” (2)
facts outside the record warrant a new trial; and (3) “[t]he trial court has
the discretion to grant a new trial in the interests of justice . . . .”  The
motion for new trial did not address appellant’s competency to stand trial or
the voluntariness of his jury trial waiver.  The motion was overruled by
operation of law.  Appellant timely filed a notice of appeal on November 17,
2008.

Analysis

In his first issue, appellant contends the trial
court erred by failing to conduct an informal inquiry into appellant’s
competency to stand trial.  In his second issue, appellant contends his jury
trial waiver was involuntary because it resulted from duress and coercion.  We
address each issue in turn.

I.                  
Competency 

A defendant is incompetent to stand trial if he lacks
(1) sufficient present ability to consult with his lawyer with a reasonable degree
of rational understanding; or (2) a rational and factual understanding of the
proceedings.  Tex. Code Crim. Proc. Ann. art. 46B.003(a)(1), (2) (Vernon 2006). 
A defendant is presumed to be competent to stand trial unless proved
incompetent by a preponderance of the evidence.  Id. art. 46B.003(b).

If evidence suggesting that the defendant may be
incompetent to stand trial comes to the trial court’s attention, then the court
on its own motion shall suggest that the defendant may be incompetent to stand
trial.  Id. art. 46B.004(b).  On suggestion that the defendant may be
incompetent to stand trial, the court “shall determine by informal inquiry
whether there is some evidence from any source that would support a finding
that the defendant may be incompetent to stand trial.”  Id. art.
46B.004(c).  A trial court should conduct a competency inquiry if the trial
judge has a bona fide doubt about the competency of the defendant.  Montoya
v. State, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009).  A bona fide
doubt is “a real doubt in the judge’s mind as to the defendant’s competency.”  Alcott
v. State, 51 S.W.3d 596, 599 n.10 (Tex. Crim. App. 2001).

A bona fide doubt may exist if the defendant
“exhibits truly bizarre behavior or has a recent history of severe mental
illness or at least moderate mental retardation.”  Montoya, 291 S.W.3d
at 425.   Evidence raising a bona fide doubt about a defendant’s
competency may come from a trial court’s observations, known facts, evidence
submitted, motions, affidavits, or any other claim or credible source.  Houston
v. State, Nos. 01-06-01000-CR & 01-06-01001-CR, 2008 WL 597285, at *2
(Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op., not designated
for publication) (citing Brown v. State, 129 S.W.3d 762, 765 (Tex.
App.—Houston [1st Dist.] 2004, no pet.)).

In the trial court, neither appellant nor the State
suggested by motion that appellant may have been incompetent to stand trial.  Appellant
contends that the trial court erred by failing to conduct an inquiry into his
competency sua sponte pursuant to article 46B.004(c).[1] 
We review a trial court’s decision not to conduct a competency inquiry under an
abuse of discretion standard.  Moore v. State, 999 S.W.2d 385, 393 (Tex.
Crim. App. 1999); LaHood v. State, 171 S.W.3d 613, 617-18 (Tex. App.—Houston
[14th Dist.] 2005, pet. ref’d).  A trial court abuses its discretion if its
decision is arbitrary or unreasonable.  Montoya, 291 S.W.3d at 426.  In
performing this review, we are mindful that trial courts are in a superior
position to make competency judgments because they can observe the defendant’s
conduct and demeanor directly.  Montoya, 291 S.W.3d at 426.

There is no evidence of mental illness or bizarre
behavior on this record; appellant does not contend that he lacked a rational
and factual understanding of the proceedings.  He contends only that he lacked sufficient
ability to consult with his lawyer.  Appellant argues there was a “clear
indication” sufficient to create a bona fide doubt about appellant’s ability
to consult with his lawyer based upon (1) repeated assertions during hearings
that pain from appellant’s infected foot wound interfered with counsel’s communication
with appellant; and (2) appellant’s testimony that he experienced constant pain
and “can’t even think straight every day.”[2] 


On this record, the trial court acted within its
discretion in concluding that no competency inquiry was warranted.  This
conclusion applies even if it is assumed solely for argument’s sake that pain can
affect rational understanding for purposes of an article 46B inquiry.[3]

Incompetence is judged by the ability of a defendant
to consult with his lawyer — not by the actual consultations.  Baugh v.
State, No. 14-06-00553-CR, 2007 WL 1247311, at *3 (Tex. App.—Houston [14th
Dist.] May 1, 2007) (mem. op., not designated for publication) (citing Tex.
Code Crim. Proc. art 46B.003(a)).  “A defendant’s failure to cooperate with
counsel is not probative evidence of incompetence.”  Id. (citing Burks
v. State, 792 S.W.2d 835, 840 (Tex. App.—Houston [1st Dist.] 1990, pet.
ref’d)).  Similarly, evidence of impairment does not support a competency
inquiry where there is no evidence indicating the defendant is unable to consult
with his attorney with a reasonable degree of rational understanding.  See Moore,
999 S.W.2d at 395; Reed v. State, 112 S.W.3d 706, 710-11 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d).

Trial counsel’s assertions of communication
difficulty neither established incompetency nor necessitated a hearing.  See
Moore, 999 S.W.2d at 394-96;  McWherter v. State, 607 S.W.2d 531,
534 (Tex. Crim. App. 1980) (motion asserting appellant was incompetent and
requesting a psychiatric evaluation, which was not supported by evidence, did
not raise bona fide doubt as to appellant’s competency).  Appellant’s
assertion that “I can’t even think straight,” does not mandate a competency
inquiry.  See McDaniel v. State, 98 S.W.3d 704, 711 (Tex. Crim. App.
2003) (assertion that “I am incompetent” does not establish necessity of competency
inquiry); Rojas v. State, 228 S.W.3d 770, 773 (Tex. App.—Amarillo 2007,
no pet.) (appellant’s statement that he did not always understand what counsel
told him did not show inability to consult with his attorney).  The trial court
has discretion to distinguish between evidence exhibiting impairment and evidence
demonstrating incompetency as contemplated by the law.  See Moore, 999
S.W.2d at 396.  The trial court acted within its discretion here in concluding
that trial counsel’s statements regarding communication difficulties did not raise
a bona fide doubt concerning appellant’s ability to consult with his
attorney with a reasonable degree of rational understanding.  

We note that appellant readily answered questions on
direct and cross-examination when he testified at trial.  He testified in
detail and without difficulty regarding his recollection of the events leading
to his arrest on May 3, 2008; he also asserted that he had sufficient knowledge
and “snap” to avoid dealing drugs after a previous drug conviction.  Appellant’s
detailed and lucid trial testimony underscores the appropriateness of the trial
court’s exercise of discretion.  See McDaniel, 98 S.W.3d at 712
(defendant’s clear and lucid testimony is important in determining whether
evidence raised a bona fide doubt as to defendant’s competency); Kostura
v. State, 292 S.W.3d 744, 747-48 (Tex. App.—Houston [14th Dist.] 2009, no
pet.) (history of mental illness and bizarre behavior was insufficient to raise
a bona fide doubt requiring a competency inquiry in light of appellant’s
lucid testimony); Ryan v. State, 937 S.W.2d 93, 106 (Tex. App.—Beaumont
1996, pet. ref’d) (appellant’s trial testimony is a “good barometer” of
competency).  

We overrule appellant’s first issue.  

II.              
Waiver of Right to Jury Trial

In his second issue, appellant argues that his jury
trial waiver was the result of duress and coercion by the State.  Appellant
asserts that the waiver was involuntary because he received inadequate medical
treatment and pain medication during his pretrial incarceration in the
Montgomery County Jail.  

A defendant in a criminal proceeding has an absolute
right to a jury trial.  U.S. Const. amend 6; Tex. Const. art. I, § 15; Tex.
Code Crim. Proc. Ann. art. 1.12 (Vernon 2005); see also Hobbs v. State,
298 S.W.3d 193, 197 (Tex. Crim. App. 2009).  The State must establish an express,
knowing, and intelligent waiver of the right to a jury trial by the defendant. 
Hobbs, 298 S.W.3d at 197.  

A defendant who wishes to relinquish his right to a jury
trial must do so expressly.  Marin v. State, 851 S.W.2d 275, 278-79
(Tex. Crim. App. 1993) (en banc), overruled on other grounds by Cain v.
State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).   An express waiver is
not sufficient if it does not amount to the “‘intentional relinquishment or
abandonment of a known right or privilege.’”  Id. at 279 (quoting Janecka
v. State, 739 S.W.2d 813, 829 (Tex. Crim. App. 1987)).  An effective waiver
exists when a written waiver is signed by a defendant, his counsel explains the
advantages and disadvantages of a jury trial, and the defendant considers the
waiver to be voluntary and knowing.  Hoang v. State, 825 S.W.2d 729, 732
(Tex. App.—Houston [14th Dist.] 1992 pet. ref’d).  A jury trial waiver in a
criminal proceeding other than a capital felony murder proceeding in which the
death penalty is sought must be made in person by the defendant in writing in
open court with the consent and approval of the court and the State.  Tex. Code
Crim. Proc. Ann. art. 1.13(a) (Vernon 2005).  

Appellant does not contend that article 1.13(a) was
not satisfied, or that he sought to revoke his waiver.  The written waivers
executed at the October 8 hearing are prima facie evidence that appellant’s waivers
were voluntary.  Appellant nonetheless contends that his waiver was involuntary;
he points to his testimony at the October 8 hearing in which he responded to a
question about trying his case to the bench by describing his complaints
regarding the adequacy of his medical care in jail.

The record does not support appellant’s involuntariness
contention.  While appellant complained at multiple hearings about the medical
care he received in jail, he did not state that he was waiving his right to a
jury trial with the goal of obtaining better medical care.  He did not testify
about his reason for waiving his right to a jury trial at the October 8
hearing.  When he was asked point-blank at the beginning of trial on November
10 to state why he wanted his case tried to the bench, appellant responded as
follows:  “ . . . I am burned up.  My face, my nose, my ears.  I am missing my
arm.  I’m afraid that appearance would definitely intimidate the jurors and I
don’t think the Judge will judge me on my appearance.”  This testimony demonstrates
a motivation for the jury trial waiver that is unrelated to appellant’s
complaints regarding the adequacy of the medical care he had received.  This
record does not establish that appellant’s waiver of his right to a jury trial
was involuntary.  See Benjamin v. State, No. 14-06-00147-CR, No.
14-06-00148-CR, 2007 WL 1470222, at *3 (Tex. App.—Houston [14th Dist.] May 22,
2007, pet. ref’d) (mem. op., not designated for publication) (defendant’s assertion
that he was “not thinking clearly” and his testimony regarding concerns about
his safety in jail did not establish that jury trial waiver was involuntary).

We overrule appellant’s second issue.

Conclusion

Accordingly, the judgments of the
trial court are affirmed.                                                      

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore,
Boyce, and Christopher.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] 
The State argues that appellant did not preserve this issue because he failed
to raise it during proceedings in the trial court.  We reject this argument
because the trial court is required to conduct a competency inquiry sua
sponte if the evidence raises a bona fide doubt about a defendant’s
competency.  See Montoya, 291 S.W.3d at 425; Mitchell v. State,
No. 14-03-00923-CR, 2004 WL 3202866, at *1 n.1 (Tex. App.—Houston [14th Dist.]
Nov. 24, 2004, pet. ref’d) (mem. op., not designated for publication).





[2] 
Appellant also argues that a bona fide doubt existed based on the
State’s comments during the November 4 hearing.  According to appellant, the
State “request[ed] . . . that the court order the jail to administer narcotic
medication to Appellant so that Appellant can effectively communicate with
Appellant’s trial counsel.”  This contention is not persuasive.  The State
asserted during the hearing, “[W]hatever the doctors prescribe, give him.” 
When the trial court asked appellant’s trial counsel whether pain medications
had been prescribed by appellant’s private doctors, counsel stated: “I don’t
think so, Judge.”





[3] 
The State argues that article 46B does not apply here because appellant’s asserted
inability to consult with his attorney involved only physical impairment.  In
light of our disposition, we do not address this contention.