**Abated and Remanded and Order filed May 24, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00631-CR

---

### JEFFERY CALHOUN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1541405**

---

### ABATEMENT ORDER

Appellant Jeffery Calhoun was placed on community supervision for aggravated sexual assault of a child, a first-degree felony. *See* Tex. Code Crim. Proc. Ann. art. 42.12; Tex. Penal Code Ann. § 22.021(a)(2)(B). By three issues, appellant argues that the trial court abused its discretion by (1) failing to sua sponte conduct an informal inquiry into appellant's competency to stand trial and (2) revoking appellant's community supervision; and that (3) the judgment should be corrected to reflect that appellant pleaded "false" to the motion to revoke

community supervision.[1] Because we conclude the record contains a suggestion from a credible source that appellant may be incompetent, we hold that the trial court abused its discretion when it failed to conduct an informal inquiry into appellant's competency to stand trial. We therefore sustain appellant's first issue, abate appellant's appeal, and remand to the trial court for further proceedings consistent with this order.

## I. BACKGROUND

In August 2014, when appellant was sixteen years old, he was charged with aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). On February 3, 2016, appellant pleaded guilty to the offense, and the juvenile court placed him on community supervision for six years.

In February 2017, appellant's case was transferred to a district court, which determined appellant had four years and eleven months remaining of his community supervision. On February 8, 2018, the State filed a motion to revoke appellant's community supervision, alleging that he violated terms of his community supervision. Appellant was arrested and jailed until June 2018, when the State filed a motion to dismiss its motion to revoke. As its stated reason for dismissing its motion, the State listed, "Cannot prove violations beyond a preponderance of the evidence."

On February 17, 2020, the State of Texas filed a second motion to revoke appellant's community supervision, alleging that appellant violated the following terms of his community supervision:

---

[1] Appellant's brief lists seven issues, which we reorganized into three. In his first listed issue, appellant argues the trial court failed to conduct an informal inquiry into his competency. In his second through sixth listed issues, appellant challenged each of the five alleged violations, respectively, supporting the revocation of his community supervision. In his seventh listed issue, appellant asserted that the judgment needed to be corrected to accurately reflect his plea.

1. Failing to present job search logs, to-wit; the Defendant failed to present a log of all attempts to secure employment to his Community Supervision Officer as directed.

2. Failing to pay Client Identification Card fee as directed by the Court and is $12.50 in arrears as of 02/03/20.

3. Failing to pay a drug testing fee as directed by the Court and is $61.50 in arrears as of 02/03/20.

4. Failing to participate in Sex Offender Treatment, to wit; The Defendant was ordered to participate in Sex Offender Treatment beginning immediately upon referral, attend treatment and aftercare with a State of Texas registered Sex Offender Provider as recommended and comply with all program rules, regulations, and guidelines until successfully discharged or released by further order of the Court. The Defendant failed to comply by being unsuccessfully discharged from sex offender treatment on 01/24/2020.

5. Viewing, owning or possessing pornographic materials.

A hearing on the State's motion was conducted in September 2020. The sole witness was Satillia Davis, appellant's community supervision officer. Davis testified concerning appellant's mental health disorders, the terms of his community supervision, and how appellant violated those terms.

According to Davis, appellant lives at Meridian Center. Meridian Center is a group home for individuals with intellectual disabilities; appellant has lived at Meridian Center since his mother passed away when he was young. Appellant did not know his father.

Davis testified that appellant has an intellectual disability, a pervasive developmental disorder, an adjustment disorder with mixed disturbance of emotions and conduct, and a depressive disorder, among others. When appellant was nearly eighteen years old, he was determined to have the mental capacity of an

eight-and-a-half-year-old.[2] Davis then testified concerning appellant's violation of the terms of his community supervision.

The record reflects that after appellant was detained in Harris County Jail in February 2020, an "Early Identification of Suspected Mental Illness or Intellectual Disability TEX. CODE CRIM. PROC. ART. 16.22" was provided, ordering the service provider contracted by the jail who provides mental, intellectual, and disability services to determine if he was afflicted by mental illness or intellectual disabilities. *See* Tex. Code Crim. Proc. Ann. art. 16.22. After this investigation was completed, the same service provider was required to compile a report and submit it to the court for the official record. The prepared report indicated that appellant suffers from mental illness, but the report did not specifically address appellant's competency to stand trial. The report additionally stated, "[Appellant] was placed in queue to see MH RN for medication management. [Appellant] was educated on how to complete/submit an Inmate Request Form as means of requesting MH services and what to do if [appellant] has a MH crisis."

At the close of the hearing, the trial court found all five of the State's allegations of community supervision violations true and sentenced appellant to four years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Appellant filed a timely appeal.

## II.    INFORMAL INQUIRY INTO COMPETENCY TO STAND TRIAL

In his first issue, appellant argues that the trial court failed to sua sponte conduct an informal inquiry into appellant's competency to stand trial.

---

[2] At the time of trial, appellant was twenty-two years old.

## A.    STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's failure to conduct a competency inquiry for an abuse of discretion. *See Kostura v. State*, 292 S.W.3d 744, 746–47 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Lahood v. State,* 171 S.W.3d 613, 617–18 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also Moore v. State,* 999 S.W.2d 385, 393 (Tex. Crim. App. 1999).

A defendant is not competent to stand trial if he lacks (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003(a); *see Bautista v. State*, 605 S.W.3d 520, 527 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

> It violates due process to put an incompetent person to trial. When a trial court errs in failing to conduct a competency hearing, the remedy is to abate the appeal and remand the cause to the trial court to conduct a retrospective trial if one is feasible. If a defendant is tried and convicted, but is later found to have been incompetent to stand trial, that trial is rendered invalid on due-process grounds.

*Turner v. State*, 570 S.W.3d 250, 262 (Tex. Crim. App. 2018).

A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proven incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46B.003(b). The Code of Criminal Procedure establishes a two-step procedure trial courts must employ before concluding that a defendant is incompetent to stand trial. *See Bautista*, 605 S.W.3d at 527. The first step is an informal inquiry and the second step is a formal competency trial. *Id.*

An informal inquiry is triggered upon a suggestion from any credible source that a defendant may be incompetent. *Id.* (citing Tex. Code Crim. Proc. art.

46B.004(a), (c), (c-1)). On suggestion that the defendant may be incompetent to stand trial, the trial court must conduct an informal inquiry to determine whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. Tex. Code Crim. Proc. art. 46B.004(c). No further evidentiary showing is required, nor is the trial court required to have a bona fide doubt regarding a defendant's competency. *Id.* art. 46B.004(c-1); *see Laflash v. State*, 614 S.W.3d 427, 429 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Evidence suggesting the need for an informal inquiry may be based on observations made in relation to one or more of the factors described in article 46B.024 of the Code of Criminal Procedure, or on any other indication that the defendant is incompetent within the meaning of article 46B.003. *See* Tex. Code Crim. Proc. arts. 46B.004(c-1), 46B.024. The factors set out in article 46B.024 are non-exclusive, and include, but are not limited to, the capacity of the defendant during criminal proceedings to (1) rationally understand the charges against him and the potential consequences of those pending charges, (2) disclose to his defense counsel pertinent facts, events, and states of mind, (3) engage in a reasoned choice of legal strategies and options, (4) understand the adversarial nature of the criminal proceedings, (5) exhibit appropriate courtroom behavior, and (6) testify. *Id.* art. 46B.024(1)(A)-(F). Additional considerations include information regarding whether the defendant has a mental illness or an intellectual disability, "whether the identified condition has lasted or is expected to last continuously for at least one year," whether medication is necessary to maintain the defendant's competency, and "the degree of impairment resulting from the mental illness or intellectual disability . . . and the specific impact on the defendant's capacity to engage with counsel in a reasonable and rational manner."

*Id.* art. 46B.024(2)–(5); *see Laflash*, 614 S.W.3d at 432.

## B.    ANALYSIS

In support of his contention that the trial court should have conducted an informal inquiry into his competency to stand trial, appellant  argues that evidence admitted during his trial should have placed the trial court on notice that his competency to stand trial was at issue. Appellant notes that the trial court received a report indicating that appellant suffered from mental illness. Davis testified that appellant had the mental capacity of an eight-and-a-half-year old and lived at Meridian Center, a home for individuals with intellectual disabilities, and that Meridian handled all of appellant's money and maintained possession of his documents. Appellant compares the current case to *Bautista*, where we concluded that the trial court abused its discretion in failing to sua sponte conduct an informal inquiry into the defendant's competency to stand trial. *See Bautista*, 605 S.W.3d at 527.

In *Bautista*, the defendant's attorney informed the trial court that the defendant—with an estimated IQ of 70—had the functional equivalent of an eleven-year old and that he "finds it difficult to keep the most menial jobs." *See id.* at 528. Additionally, before the defendant testified, his attorney and the trial court engaged in a conversation outside of the presence of the jury to discuss the defendant's ability to understand the legal consequences of waiving his rights and his ability to understand what his attorney tells him:

| [Trial Court]: | Okay. Do you think [the defendant] had enough time to knowingly appreciate his right to remain silent and is fully aware of what it entails when he waives it? |
|---|---|
| [Attorney]: | I can't make that statement, Judge. I'm here to tell you that [defendant] is very limited in what he |

7

> understands when we speak. We've gone over this a few times. *But, whether or not he fully comprehends it, that's a mystery to both of us.*

*Id.* at 529. (emphasis added). Thus, in *Bautista*, there was direct evidence suggesting that the defendant was incompetent to stand trial because, in addition to the evidence of the defendant's IQ and his inability to keep a job, the attorney testified that he was uncertain whether the defendant understood his rights and the consequences of waiving those rights. *See id.*

In the present case, there is ample evidence of appellant's mental impairments and illnesses. It is true that evidence of mental impairment alone is generally not sufficient to raise the issue of incompetency. *See* Tex. Code Crim. Proc. Ann. art. 46B.003(a); *Moore v. State*, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999) ("It is not enough . . . for counsel to allege unspecified difficulties in communicating with the defendant. Information which raises the issue of a defendant's competency to stand trial can be provided by defense counsel. However, such information must be specific and illustrative of a present inability to communicate with the defendant." (internal citation omitted)); *see also Williams v. State*, No. 14-09-00042-CR, 2010 WL 3921128, at *4 (Tex. App.—Houston [14th Dist.] Oct. 7, 2010, no pet.) (mem. op., not designated for publication) ("[E]vidence of impairment does not support a competency inquiry where there is no evidence indicating the defendant is unable to consult with his attorney with a reasonable degree of rational understanding."); *Reed v. State*, 112 S.W.3d 706, 711 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("It is within the purview of the trial judge to distinguish evidence showing only impairment from that indicating incompetency as contemplated by the law."). However, the record still contains evidence from credible sources to suggest that appellant may be incompetent. *See Laflash*, 614 S.W.3d at 433 ( ("The amount of information necessary to trigger an

8

informal inquiry is low and can be satisfied with a suggestion from any credible source that a defendant may be incompetent.").

The record established that appellant had the mental capacity of an eight-and-a-half-year old. According to Davis, appellant is afflicted with several limiting conditions, including the limited capacity of an eight-and-a-half-year old child, intellectual disability, a pervasive developmental disorder, an adjustment disorder with mixed disturbance of emotions and conduct, and a depressive disorder. Evidence was provided to the trial court of appellant's lifetime residency at Meridian Center, a home for individuals with intellectual disabilities, and that appellant relied on Meridian Center for managing his finances and accessing important documents, such as his birth certificate and state identification. The record indicates appellant had had no treatment for his mental conditions prior to his most recent incarceration and was "placed in a queue for medication management." This evidence was sufficient to suggest that appellant lacked the ability to sufficiently consult with his attorney and that he lacked a rational and factual understanding of the proceedings against him. Thus, we conclude that an informal inquiry should have been conducted because "the trial court was effectively put on notice of the need to maintain vigilance to assure that the appellant's due process rights were preserved." *Turner*, 422 S.W.3d at 694; *see Bautista*, 605 S.W.3d at 527; *see also Laflash*, 614 S.W.3d at 429 (concluding that an informal inquiry into incompetency was triggered when the defendant had an IQ of 61, a doctor testified that the defendant "did not have an understanding of the various pleas, nor does he understand the implication of accepting an arranged plea bargain," and the defendant's father testified that the defendant "[g]ets confused very often" and that "[s]ome things he just doesn't get and—he says he does, but he—he doesn't").

9

Accordingly, the trial court abused its discretion by failing to conduct an informal inquiry into appellant's competency. *See Kostura*, 292 S.W.3d at 746–47. We sustain appellant's first issue. Because we sustain appellant's first issue, we do not presently need to address appellant's second and third issues.

## III. DISPOSITION

Having sustained appellant's first issue on appeal, we abate appellant's appeal and remand the case to the trial court. *See Turner v. State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013) (abating appeal and remanding the case to the trial court for a determination whether it was feasible to conduct a retrospective competency trial). On remand, the trial court shall, within 30 days, initially determine the feasibility of a retrospective competency inquiry given the passage of time, availability of evidence, and any other pertinent considerations. *See id.* (citing 43 George E. Dix & John M. Schmolesky, *Texas Practice: Criminal Practice and Procedure* § 31:81, at 89–90 & n.10 (3d ed. 2011)). If the trial court determines a retrospective competency inquiry is feasible, then it shall conduct an informal inquiry into appellant's competency to stand trial. If the informal inquiry establishes that there is some evidence of incompetency, then the trial court shall conduct a formal competency trial. Regardless of whether the trial court deems a retrospective competency inquiry feasible or not, the record of the trial court's proceedings on remand shall be filed with this Court on or before 90 days from the date of this order for reinstatement of appellant's appeal.[3]

---

[3] We will address appellant's remaining issues, if necessary, once the competency matter is resolved by the trial court. *See Turner v. State*, 422 S.W.3d 676, 697 n.44 (Tex. Crim. App. 2013).

/s/     Margaret "Meg" Poissant
        Justice


Panel consists of Justices Jewell, Bourliot, and Poissant.
Do Not Publish — Tex. R. App. P. 47.2(b).