

# NUMBER 13-20-00026-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI − EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

EDWARD JEROME HUFF,                                                   Appellee.

## On appeal from the 272nd District Court
## of Brazos County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellee Edward Jerome Huff was convicted of unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04. The trial court subsequently granted Huff's motion for new trial. By what we construe as a single issue with four sub-issues, the State argues that the trial court erred by granting Huff's motion for new trial. We reverse the trial court's order and render judgment denying the motion

for new trial.

## I. BACKGROUND[1]

In September 2017, Huff, a convicted felon, displayed a firearm to a retired couple at Lake Bryan, near Bryan, Texas. According to Huff, he was going to spend the night in his car before going to a scheduled Veteran's Administration appointment in Bryan the next day. Huff was arrested later that evening.

In November 2017, Huff was indicted for unlawful possession of a firearm by a felon based on the incident in September. *See id.* The State added two enhancement paragraphs, alleging that Huff was a habitual felony offender. *See id.* § 12.42(d). In a separate cause number, Huff was indicted for the misdemeanor offense of disorderly conduct—display of firearm. *See id.* § 42.01(8). After the indictments, the State filed a "motion suggesting incompetency and request for examination," alleging in both cause numbers that Huff might be incompetent to stand trial. The trial court ordered that Huff be evaluated by Jennifer Rockett, a forensic psychologist.

Rockett issued two reports. In her first report, issued on June 6, 2018, Rockett made the following observations and conclusions:

**Charge #1; Unlawful Possession of a Firearm by a Felon:**

Concerning the charge of unlawful possession of a firearm by a felon, the defendant's reasoning for purchasing the weapon was based on his delusional belief that he was being targeted by people associated with his previous employers because he had filed a lawsuit against them. It is my professional opinion, however, that he did not know that purchasing the weapon was legally wrong, not due to his mental illness, but rather due to

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

his possible (mis)understanding of the law (which does not appear to be based in delusion). The documents he provided for me to review appeared to have led him to believe that it was lawful for him to possess a firearm. Thus, it is my professional opinion that at the time of the offense of unlawful possession of a firearm by a felon, the defendant was sane. That is, his knowledge of wrongfulness was impaired by a mistake of law (or an accurate reading of the law) rather than because of a mental disease or defect.

**Charge #2; Disorderly Conduct by Display of a Firearm by a Felon:**

At the time of the offense, the defendant appears to have been experiencing non-bizarre, persecutory delusions concerning efforts by his previous employers to watch, follow, and record his activities, to create problems for him financially and with his living arrangements and stability, to place powder substances and bugs in his car and home to cause him injury and illness, and to run him off the road on two occasions. His motive for displaying his firearm appears to have been driven by his persecutory delusions. It appears that he felt he needed to protect himself from possible harm and make it known to the people he believed were following him that he had armed himself. Thus, it is my professional opinion that at the time of the offense of disorderly conduct by the display of a firearm by a felon, the defendant was not sane and his knowledge of wrongfulness was impaired by his delusional disorder and associated persecutory beliefs.

In her second report, issued on June 26, 2018, Rockett concluded that Huff was competent to stand trial on the charge of unlawful possession of a firearm but incompetent to stand trial on the associated misdemeanor of disorderly conduct.

The parties disregarded the reports and agreed that Huff was incompetent to stand trial on both charges. The trial court ordered Huff to be committed to Austin State Hospital (ASH) for a period not to exceed 120 days for evaluation and to restore him to competency, if necessary. While committed, Huff was treated by Andrew Wright, a forensic psychologist. In his report, Wright discussed Huff's delusional disorder and his competency to stand trial:

3

Despite his concerns with his current attorney, [Huff] reported that he did feel he could work with an attorney. He was able to give a detailed account of the events surrounding his arrest and reported that he had documents to support his defense strategy. [Huff] stated that he felt ready to move forward with his case.

The disparity between presentations is suspected to be due in part to [Huff's] access to the reports by Dr. Rockett and his current medical records at ASH. I believe that [Huff] was likely minimizing his paranoia as he realized the negative impact his adamant espousal of his persecutory beliefs had on his last competency evaluation. Of note, [Huff] would not allow me to obtain any collateral information from his mother, or any other source, which could indicate an ongoing and persistent guardedness.

Ultimately, his current competency to stand trial determination must be based on his current presentation in which he demonstrated an ability to rationally participate in his defense. However, there is concern that [Huff's] ability to show flexible reasoning will not persist once his case moves forward. Specifically, there is a possibility that [Huff] will once again demonstrate a rigidity of thinking which will render him unable to rationally assist in his defense. This is more likely to occur if his currently held belief regarding his parole time out date is determined to be inaccurate.

Yet, at this time there is no evidence that a psychotic disorder, such as delusional disorder, interfered with his ability to relate to me or assist in his defense.

The case proceeded to jury trial on September 10, 2019. Huff's counsel at that time, Bill Juvrud, informed the court that he believed that Huff was competent to stand trial.[2] Huff's counsel requested and received a jury charge instruction on necessity. However, the jury rejected the necessity affirmative defense and found Huff guilty as charged. Huff elected for the trial court to assess punishment. The trial court found the enhancement paragraphs to be true and assessed punishment at twenty-five years' imprisonment, the minimum allowable sentence, in the Institutional Division of the Texas

---

[2] Huff has filed a motion asking us to take judicial notice of the fact that Juvrud passed away in June 2020. We grant the motion and take judicial notice of his death.

Department of Criminal Justice. *See id.* § 12.42(d).

In October 2019, Huff filed a motion for new trial, arguing that he was incompetent during the trial and that he received ineffective assistance of counsel. In November 2019, the trial court held a hearing on the motion for new trial. Juvrud testified that he prepared for trial by relying on Wright's report, which indicated Huff was competent to stand trial. Juvrud testified that Huff's previous attorney, David Barron, who had withdrawn from the case, did not mention Rockett's reports concerning Huff's sanity. Juvrud testified that Huff showed no signs of incompetency during his time of representing Huff. According to Juvrud, Huff was able to discuss facts of the case and explain his reasoning behind some of the issues in the case without difficulty. Juvrud further testified that his trial strategy was to use the fact that Huff believed people were following him to build a necessity defense. He did not pursue an insanity defense because he did not believe Huff's delusions made him incompetent or reached a level of insanity. Juvrud claimed that he made this judgment based on the incompetent and insane clients he had represented in the past.

Barron testified that he was appointed to represent Huff in September 2017. However, he withdrew in November 2018 and he was replaced by Juvrud. According to Barron, he suggested to Huff that they present an insanity defense, but Huff rejected the idea. One of the major factors in his withdrawal was Huff's refusal to present an insanity defense.

John Fabian, a psychologist hired by Huff, opined that an insanity defense could have been possible. He further opined that some of Huff's responses at trial, specifically

5

concerning his refusal to pursue an insanity defense, and in conjunction with the ASH report and the Rockett report, should have triggered a competency inquiry.

The trial court ultimately granted the motion for new trial on the grounds of incompetence, ineffective assistance of counsel, and in the interest of justice. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (permitting State to appeal interlocutory order granting a new trial).

## II.   MOTION FOR NEW TRIAL

In its sole issue, the State argues that the trial court erred by granting the motion for new trial. By its four sub-issues, the State asserts granting the motion was an error because: (1) the trial court used the wrong standard in evaluating the motion for new trial; (2) there was no reason to believe that Huff was incompetent at the time of trial; (3) Huff did not demonstrate that he received ineffective assistance of counsel; and (4) the verdict was just, and thus it was inappropriate to grant the motion for new trial "in the interest of justice."

## A.   Standard of Review and Applicable Law

We review a trial court's decision on a motion for new trial for an abuse of discretion. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013); *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005).

A defendant is incompetent when he or she lacks (1) sufficient present ability to consult with counsel with a reasonable degree of rational understanding or (2) a rational

6

and factual understanding of the legal proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). The issue of competency to stand trial can be raised in a motion for new trial. *See Purchase v. State*, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

> When competency is challenged in a motion for new trial, the trial court does not look to see whether the evidence raises a *bona fide* doubt as to competence, but applies the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence.

*Id.* Thus, the only inquiry the trial court needs to resolve in this circumstance is "whether the [defendant] was actually incompetent at the time of trial." *Rodriguez*, 329 S.W.3d at 77. If any evidence brought to the trial court's attention raises a bona fide doubt regarding the defendant's competency to stand trial, then the trial court is obligated to sua sponte hold an informal inquiry into the defendant's competency to stand trial. *See Rodriguez v. State*, 329 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 2010, no pet.). However, once competency has been formally determined, the trial court is not obliged to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated. *Turner v. State*, 422 S.W.3d 676, 693 (Tex. Crim. App. 2013).

## B.    Analysis

### 1.    Bona Fide Doubt Standard

In its first sub-issue, the State argues that the trial court erred by using the bona fide doubt standard in granting Huff's motion for new trial. We agree.

In his motion for new trial, Huff argued that the trial court should use the bona fide standard to determine whether another inquiry should be made into Huff's competence.

7

To support this proposition, Huff relied on two cases from the Beaumont Court of Appeals. *See Lasiter v. State*, 283 S.W.3d 909, 923 (Tex. App.—Beaumont 2009, pet. ref'd); *Durgan v State*, 259 S.W.3d 219 (Tex. App.—Beaumont 2008, no pet.). However, the Beaumont court is alone in holding that the bona fide doubt standard should be used when incompetency is raised in a motion for new trial; several sister courts have rejected this approach and have held instead that the trial court should apply a traditional standard when incompetency is raised in a motion for new trial. *See Rodriguez*, 329 S.W.3d at 77; *Purchase*, 84 S.W.3d at 699; *see also State v. Wojciechowski*, No. 13-08-00280-CR, 2009 WL 4882848, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 17, 2009, no pet.) (mem. op., not designated for publication); *Dominguez v. State*, No. 2-08-056-CR, 2009 WL 579294, at *1 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (mem. op., not designated for publication); *Powell v. State*, No. 03-07-00548-CR, 2008 WL 3540067, at *4 (Tex. App.—Austin Aug. 14, 2008, no pet.) (mem. op., not designated for publication); *Perkins v. State*, No. 06-00-00011-CR, 2001 WL 579025, at *3 (Tex. App.—Texarkana May 31, 2001, no pet.) (not designated for publication).

We agree that the bona fide doubt standard is used by trial courts to determine whether a sua sponte inquiry should be made into a defendant's competency. *See Montoya v. State*, 291 S.W.3d 420, 421 (Tex. Crim. App. 2009). However, we also conclude that the trial court should not use the bona fide standard when incompetency is raised in a motion for new trial; instead, the court should use the regular standard for determining a motion for new trial. *See Rodriguez*, 329 S.W.3d at 77; *Purchase*, 84 S.W.3d at 699. Therefore, we agree with the State that the trial court erred inasmuch as

8

it employed the bona fide doubt standard in granting the motion for new trial.

However, the bona fide doubt standard should be applied to the extent that Huff argues an informal inquiry into his competency to stand trial should have been made prior to the start of trial. *See Rodriguez*, 329 S.W.3d 78. In this regard, we note that the "evidence" required to trigger the mandatory informal inquiry can be any fact brought to the court's attention that raises a bona fide doubt regarding the defendant's competency. *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008); *Criswell v. State*, 278 S.W.3d 455, 458 (Tex.App.—Houston [14th Dist.] 2009, no pet.). Evidence sufficient to create a bona fide doubt includes facts regarding the defendant's "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Fuller*, 253 S.W.3d at 228 (quotation omitted). Evidence sufficient to create a bona fide doubt may also include any other fact from a reasonable or credible source that tends to show incompetence. *Alcott v. State*, 51 S.W.3d 596, 599 (Tex. Crim. App. 2001); *see also Kostura v. State*, 292 S.W.3d 744, 749 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (Sullivan, J., concurring). This evidence need not be sufficient to find a defendant actually incompetent. *Fuller*, 253 S.W.3d at 228. It must simply create "'a real doubt in the judge's mind as to the defendant's competency.'" *Kostura*, 292 S.W.3d at 747 (majority opinion) (quoting *Alcott*, 51 S.W.3d at 599 n. 10); *Rodriguez*, 329 S.W.3d at 77–78. Accordingly, the trial court is not to consider evidence first presented in the motion for new trial. *Rodriguez*, 329 S.W.3d at 78.

Prior to commencing trial, the trial court had before it, among other things, the report of Wright, which was written after Huff was admitted and treated at ASH. Wright's

9

report indicated a restoration of sanity, concluding in part that Huff "demonstrated an ability to rationally participate in his defense." While Wright's report indicated a potential for a decline in Huff's competence, there was no evidence of such decline at the start of trial. "These facts do not show recent severe mental illness, moderate retardation, or truly bizarre acts. Nor do these facts suggest that appellant might have been unable to consult with his attorney or understand the proceedings. Appellant offered no explanation for why the court might think otherwise." *Rodriguez*, 329 S.W.3d at 79 (citing (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (finding no error in the trial court's failure to hold an informal inquiry when the court knew the defendant suffered from depression but there was no evidence that he could not understand the proceedings or assist his attorney); *see also Williams v. State*, Nos. 14-09-00042-CR, 14-09-00043-CR, 2010 WL 3921128, at *6 (Tex. App—Houston [14th Dist.] Oct. 7, 2010, no pet.) (mem. op., not designated for publication) ("[E]vidence of impairment does not support a competency inquiry where there is no evidence indicating the defendant is unable to consult with his attorney with a reasonable degree of rational understanding.").

Accordingly, to the extent that the trial court granted Huff's motion for new trial on the grounds that an informal inquiry should have been held, we hold that there was insufficient evidence to raise a bona fide doubt as to Huff's competency, and the trial court did not abuse its discretion by failing to sua sponte hold an informal inquiry. *See Rodriguez*, 329 S.W.3d at 79.

## 2. Incompetence

In its second sub-issue, the State argues that the trial court erred by granting the motion for new trial on the ground of incompetence. The State asserts that Juvrud's trial decisions were reasonable given the information available to him. Huff argues that, even under the traditional standard for motions for new trial, the trial court properly exercised its discretion in ordering a new trial. We agree with the State.

In his motion for new trial, Huff asserted that the trial court had reason to believe that Huff was incompetent to stand trial after he returned from ASH and before sentencing. However, Huff did not demonstrate any material change suggesting that his mental status had deteriorated since Wright's report. *See Turner*, 422 S.W.3d at 693. Huff argues that Rockett's and Wright's reports both noted Huff's diagnosis of mental illness. However, "mental illness, in and of itself, does not raise an issue of incompetency." *Ex parte LaHood*, 401 S.W.3d 45, 57 (Tex. Crim. App. 2013) (Keller, J., concurring). Even considering Huff's mental illness and delusions, Rockett's report found Huff competent to stand trial on the felony charge. Similarly, Wright's report took Huff's mental condition into consideration and concluded that Huff was competent to stand trial, despite his delusions. Juvrud testified that Huff was able to assist in the preparation of the his defense and he further opined that Huff was competent to stand trial.

Huff additionally alleged in his motion for new trial that the "bizarre paranoid state" he exhibited while visiting his mother suggested that he was incompetent to stand trial. However, the test is whether Huff was incompetent at the time of trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). And Huff's visit to his mother's house occurred prior to

11

his arrest and has no bearing on his competency at the time of trial. Ultimately, there was no evidence before the trial court suggesting that at the actual time of trial, Huff could not consult with his attorney or that he lacked a rational and factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). Therefore, we conclude that the trial court abused its discretion by granting the motion for new trial on the ground of incompetence. *See Zalman*, 400 S.W.3d at 593.

### 3. Ineffective Assistance of Counsel

In its third sub-issue, the State argues that the trial court erred by granting the motion for new trial on the grounds of ineffective assistance of counsel. Because Huff did not establish that his counsel's performance fell below an objective standard of reasonableness, we agree. *See Strickland*, 466 U.S. at 687.

### a. Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id*.; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See*

*Thompson*, 9 S.W.3d at 814. Furthermore, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687.

### b. Analysis

In its third sub-issue, the State argues that the trial court erred by granting the motion for new trial on the grounds of ineffective assistance of counsel. Because Huff did not establish that his counsel's performance fell below an objective standard of reasonableness, we agree. *See Strickland*, 466 U.S. at 687.

Huff's motion alleged that Juvrud provided ineffective assistance by representing to the court that Huff was competent to stand trial. Juvrud testified that in determining Huff's incompetence, he considered Wright's report along with his own observations of Huff. Juvrud ultimately concluded, based on his experience with incompetent clients and his analysis of the report, that Huff was competent at the time of the trial. Furthermore, he testified that he used Huff's belief that someone was following him and planning to harm him to build a necessity defense. We cannot conclude that Juvrud's decisions were "so outrageous that no competent attorney would have engaged in" them. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Furthermore, Huff failed to demonstrate that his counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687. Analyzing the prejudice prong of the *Strickland* test in the context of incompetency, the court of criminal appeals has held that "[t]he focus of the prejudice inquiry here is whether an applicant can show that there was a reasonable probability that he would have been found incompetent to stand trial if the issue of competency had been raised and fully considered." *Ex parte LaHood*, 401 S.W.3d at 57. And after reviewing the record, we conclude that Huff did not meet his burden in establishing that he would have been found incompetent to stand trial but for Juvrud's allegedly deficient performance. Huff had already been evaluated twice. On both occasions, Huff was determined to be competent to stand trial on the felony charge. Furthermore, while Juvrud testified that he did not consider Rockett's report, he did consider the report issued by Wright, which concluded that Huff was competent to stand trial at the time that Juvrud represented Huff. And as discussed above, none of the evidence Huff has pointed to shows that he failed to understand the proceedings or that he had an inability to rationally communicate with his counsel. Therefore, the trial court erred by granting the motion for new trial on the ground of ineffective assistance of counsel. *See Zalman*, 400 S.W.3d at 593.

### 4. In the Interest of Justice

By its fourth sub-issue, the State argues that the trial court erred in granting the motion for new trial "in the interest of justice." We agree.

14

A motion for new trial should not be granted based upon the catch-all interests of justice unless grounded in an otherwise valid legal claim. *Thomas v. State*, 428 S.W.3d 99, 107 (Tex. Crim. App. 2014). Because we have already sustained the State's first three sub-issues, there are no remaining valid legal claims to sustain the motion for new trial. Therefore, the trial court erred by granting the motion for new trial in the interest of justice. *See id.*; *Zalman*, 400 S.W.3d at 593.

### 5. Summary

We conclude that the trial court erred inasmuch as it used the bona fide doubt standard to evaluate the motion for new trial issue of incompetence. *See Purchase*, 84 S.W.3d at 699. We further conclude that using the proper traditional standard, the trial court erred by granting the motion for new trial on the grounds of incompetence, ineffective assistance of counsel, and in the interests of justice. We sustain the State's sole issue.

### III. CONCLUSION

We reverse the trial court's order and render judgment denying the motion for new trial.

NORA L. LONGORIA
Justice

Dissenting Memorandum Opinion by
Chief Justice Contreras

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of June, 2021.

15